[No. 43266.    En Banc.    January 2, 1975.]

LULU OWENS GEISE, *Petitioner, v.* WALLACE LEE *et al., Respondents.*

*Owen J. Wales,* for petitioner.

*Martin, Niemi, Burch & Mentele,* by *Susan F. French,* for respondents.

*Daniel F. Sullivan,* amicus curiae, on behalf of Washington State Trial Lawyers Association.

HUNTER, J.—The plaintiff (petitioner), Lulu Owens Geise, a tenant in a mobile home park, brought suit against the defendants (respondents), Wallace Lee and Jane Doe Lee, doing business as Lazy Wheels Mobile Home Park, for injuries incurred by slipping on snow and ice which had accumulated in a common area of the park. The Lazy Wheels Mobile Home Park, located in Bothell, Washington, is comprised of approximately 100 spaces for mobile homes. Between the rows of spaces provided for the homes are driveways intended for both vehicular and pedestrian use, neither of which is exclusive in any given spot. All tenants were free to share these driveways in common with each other for their own particular needs.

The plaintiff is 61 years old and has been a tenant of the park since 1965. During the period beginning on January 23, 1972, and continuing until January 26, 1972, a total of approximately 12 to 14 inches of snow fell and accumulated in the driveways. During the following week, melting and freezing conditions combined with passing cars, caused ridges of ice, 4 to 6 inches in height, to form throughout the common areas creating a hazardous condition for any tenant who ventured into these expanses. The defendants had actual knowledge of this condition, having been informed by both the plaintiff and other tenants. Several of the residents of the park had fallen, resulting in one being taken to the hospital.

In spite of these adverse conditions, no attempt was ever made to clear the common areas for the benefit of the tenants, a large percentage of whom were retired individuals. On February 1, 1972, the plaintiff, while carefully making her way to her sister's car, slipped and fell on the ice causing serious injury to her person. As a result of this accident, the plaintiff initiated this action alleging that the defendants were negligent in failing to exercise reasonable care to keep the common areas under their control in a reasonably safe condition. The defendants moved for summary judgment supported solely by the facts surrounding the accident and Mr. Lee's affidavit which stated:

> I am the owner and proprietor of the trailer park where Mrs. Geise rented a space. In the January-February snow of 1972, I did not clean the street where she fell prior to her fall. I did not want to assume the responsibility of keeping the streets clear of snow and ice, and all the tenants knew it.

The trial court granted the defendants' motion on the grounds that they did not owe any duty to the plaintiff under these facts. This decision was unanimously affirmed by the Court of Appeals in *Geise v. Lee*, 10 Wn. App. 728, 519 P.2d 1005 (1974). The case comes before us upon our granting the plaintiff's petition for review.

The sole issue before this court is whether a landlord or owner has a duty to exercise reasonable care in providing safe common areas upon his rental premises, free from dangerous accumulations of snow and ice, absent a prior undertaking of such a service.

The general rule in the United States is that where an owner divides his premises and rents certain parts to various tenants, while reserving other parts such as entrances and walkways for the common use of all tenants, it is his duty to exercise reasonable care and maintain these common areas in a safe condition. *See Landlord's liability to tenant or tenant's invitees for injury or death due to ice or snow in areas or passageways used in common by tenants,*

Annot., 49 A.L.R.3d 387, 393 (1973). The dispute in the instant case arises due to a distinct division between courts from various jurisdictions in regard to the removal of natural accumulations of snow and ice. The older view, referred to as the Massachusetts rule, stems from the case of *Woods v. Naumkeag Steam Cotton Co.*, 134 Mass. 357, 45 Am. Rep. 344 (1883). This decision articulated an exception to the general rule stated above by holding that a landlord was under no duty to the tenants to remove snow and ice from common passageways, unless he had undertaken this duty in the past. Their decision was premised on the belief that to hold otherwise would place too great a burden on the landlord. In 1910, this state adopted the Massachusetts rule in *Oerter v. Ziegler*, 59 Wash. 421, 109 P. 1058 (1910), and subsequently reaffirmed it in *Schedler v. Wagner*, 37 Wn.2d 612, 225 P.2d 213, 230 P.2d 600, 26 A.L.R.2d 604 (1950). The defendants, in the instant case, argue that these decisions are still controlling. The plaintiff contends that the better view is that enunciated in *Reardon v. Shimelman*, 102 Conn. 383, 128 A. 705, 39 A.L.R. 287 (1925), commonly referred to as the Connecticut rule. We agree with the plaintiff. The court there said on page 388:

> The duty of the landlord being to exercise reasonable care to prevent the occurrence of defective or dangerous conditions in the common approaches, the fact that a particular danger arose from the fall of snow or the freezing of ice can afford no ground of distinction. Indeed, the causes which are at work to produce it are no more natural causes than are those which, more slowly, bring about the decay of wood or the rusting of iron. To set apart this particular source of danger is to create a distinction without a sound difference.

This approach has rapidly replaced the Massachusetts rule and is representative of the modern trend which has been adopted by a majority of jurisdictions. The primary reason for the wide acceptance of the Connecticut rule stems from judicial recognition of changing conditions within the ever expanding boundaries of the landlord-tenant relationship.

These courts have concluded that the landlord is best situated to cope with the hazards presented by snow and ice. The Supreme Court of Rhode Island recently summarized the logic underlying its adherence to the majority view as follows:

> We believe that today a landlord, armed with an ample supply of salt, sand, scrapers, shovels and even perhaps a snow blower, can acquit himself quite admirably as he takes to the common passageways to do battle with the fallen snow, the sun-melted snow now turned to ice, or the frozen rain. We fail to see the rationale for a rule which grants a seasonal exemption from liability to a landlord because he has failed to take adequate precautions against the hazards that can arise from the presence of unshoveled snow or unsanded or salt-free ice found in the areas of his responsibility but yet hold him liable on a year-round basis for other types of defects attributable to the workings of mother nature in the very same portions of his property. . . . To draw such a distinction . . . was "* * *" to create in the law another of those strange anomalies which, once created, live on to haunt successive legal generations."

(Citation omitted.) *Fuller v. Housing Authority,* 108 R.I. 770, 773-74, 279 A.2d 438, 49 A.L.R.3d 382 (1971). *See also Kopke v. AAA Warehouse Corp.,* 30 Colo. App. 470, 494 P. 2d 1307 (1972); *Yerly v. Jenik,* 491 P.2d 980 (Colo. App. 1971); *Monroe Park Apartments Corp. v. Bennett,* 232 A.2d 105 (Del. 1967); *Langley Park Apartments, Sec. H., Inc. v. Lund,* 234 Md. 402, 199 A.2d 620 (1964); *Strong v. Shefveland,* 249 Minn. 59, 81 N.W.2d 247 (1957) (applying the Connecticut rule to a trailer park situation); and *Massor v. Yates,* 137 Ore. 569, 3 P.2d 784 (1931).

■ The foregoing cases and their progeny, were implicitly adopted by this court in *McCutcheon v. United Homes Corp.,* 79 Wn.2d 443, 486 P.2d 1093 (1971). In *McCutcheon* the plaintiff rented an apartment on a month-to-month basis in a multi-dwelling complex owned by the defendant. The plaintiff was injured when she fell down an unlit flight of stairs leading from her apartment. Her rental agreement

contained a general exculpatory clause relieving the owners of all liability resulting from their negligence in maintaining the common areas. In holding the exculpatory clause to be invalid, we took judicial notice of the fact that multi-family dwelling complexes have become a major commercial enterprise, which directly affects the lives of literally thousands of people who must rely on this style of living for shelter. We explicitly stated that the landlord could not passively refrain from negligent conduct, and we further enunciated that the landlord has an "affirmative obligation or duty to keep or maintain the 'common areas' in a reasonably safe condition for the tenant's use." *McCutcheon v. United Homes Corp., supra* at 447. It is important to the disposition of the instant case to recognize that *McCutcheon* did not limit the owner's "affirmative duty" with any exception for natural accumulations of snow and ice. Rather, we applied the same logic and reasoning in reaching this conclusion as other courts had applied in their adoption of a general standard of reasonable care in regard to a landlord's duty to provide safe common areas. Therefore, it is implicit that we divorced ourselves from the antiquated Massachusetts rule with our disposition in *McCutcheon*, and have since joined the majority of states in adhering to the modern Connecticut rule.

As we reaffirm our position of imposing an affirmative duty on the landlord to provide safe common areas, we must emphasize that this does not make the landlord a guarantor of the safety of those lawfully on the premises. Instead we require that he exercise reasonable care in keeping all common areas reasonably safe from hazards likely to cause injury. Accordingly, a plaintiff must demonstrate that the landlord had actual or constructive notice of the danger, and failed within a reasonable time to exercise sensible care in alleviating the situation. We do not feel that this places an insurmountable burden of "vigilance and care" on a landlord.

Therefore, we hold that the trial court erred in granting

the defendants' motion for summary judgment, since a question of fact was presented as to whether the defendants exercised reasonable care in light of their actual notice of the situation and the surrounding circumstances. Furthermore, since we have by this opinion determined that our decision in *McCutcheon* implicitly overruled the cases of *Oerter v. Ziegler, supra,* and *Schedler v. Wagner, supra,* any discussion of whether this opinion is to be applied prospectively or retroactively is moot.

The determination of the Court of Appeals and the judgment of the trial court are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.