914 P.2d 728 (1996)
129 Wash.2d 43
James DEGEL, as guardian for Jason Farris, and Gary H. Farris, Appellants,
v.
MAJESTIC MOBILE MANOR, INC., and Robert D. Tate and Vivian E. Tate, husband and wife, Respondents.
No. 62312-1.
Supreme Court of Washington, En Banc.
April 18, 1996.
*729 Thorsrud, Cane & Paulich, Russell C. Love, Seattle, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Timothy J. Whitters, Linda C.J. Young, Tacoma, Amicus Curiae, Washington Defense Trial Lawyers.
Samuel Pemberton, Jr., Tacoma, for Appellants.
Burgess, Fitzer, Leighton & Phillips, P.S., Fredrick R. Burgess, Tacoma, for Respondents.
GUY, Justice.
This premises liability action was brought on behalf of a small child who was seriously injured when he slid down a steep embankment and into a fast-flowing creek adjacent to the play area near his home. The trial court dismissed the action on summary judgment, ruling as a matter of law that a landowner has no duty to protect an invitee from dangers inherent in a natural body of water.
We granted direct review and reverse. We hold that a landowner is not exempt from the duty to exercise reasonable care to protect invitees against potentially dangerous conditions on the land solely because the potential danger includes risks which are inherent in a natural body of water.

FACTS
Respondent Majestic Mobile Manor and its owners, Respondents Robert and Vivian Tate (hereafter referred to collectively as "landlord"), stipulated to the following facts for purposes of the motion for summary judgment:
In June 1988 Plaintiff Gary Farris and his family, which at that time included his wife, two stepsons, a stepdaughter and a daughter, moved to Majestic Mobile Manor, a mobile home park in rural Pierce County. Jason Farris was born 10 months later, on April 21, 1989.[1] In addition to their basic rent for a mobile home space, the Farrises were charged an additional $1.00 per day for each child.
The mobile home park is somewhat rectangular in shape, with a perimeter road surrounding the mobile home spaces. At one point the outer corner of this perimeter road passes in the vicinity of Clark's Creek. This is a clear, shallow, slow-moving creek in summer *730 that can be deep, swift and murky during the winter months. The creek is approximately ten feet below the level of the road and a total of about twenty feet from the edge of the road. The landlord required families with small children to live at the far end of the mobile home park, away from families without children, and in the area closest to Clark's Creek. The perimeter road passes just in front of the space where the Farris home was located in January 1992. On the far side of this perimeter road is a grassy area for tents and picnics, as well as the steep embankment leading to Clark's Creek. The grassy area has a basketball hoop and, with the adjacent perimeter road, is used by resident children as a play area. As many as twenty children at a time would play in this area.
Although the mobile home park is partially fenced, there is no fence running along the property nearest the grassy play area where the steep embankment leading to Clark's Creek is located. The Farrises did not allow their young children to play outside the house alone and did not allow them to go near the creek by themselves.
The injury to young Jason Farris occurred on January 12, 1992. On that day the child's father was working on the roof of his mobile home, repairing damage caused by a windstorm. Jason and his four-year-old sister, Nicole, were playing in the grassy tent area near the basketball hoop. While Mr. Farris worked on the roof, Jason, then age two years and eight months, began riding Nicole's bicycle (equipped with training wheels). At some point Mr. Farris got down off the roof and righted the bicycle for Jason. He then told the children to ride their bicycles in an area where he would be able to watch them from the roof of the home. When Mr. Farris turned to walk back around the mobile home and up the ladder, Jason was riding the bicycle on the road behind him. Mr. Farris had Jason out of his sight "for well less than one minute" when he saw Nicole alone and realized Jason was not within eyesight. Mr. Farris found the bicycle Jason had been riding at the bottom of the embankment, partially submerged in Clark's Creek. The embankment is wooded and on that day was covered with grass, leaves and tree branches. It was extremely slippery. A neighbor helping to search for the child eventually found Jason in the creek. As a result of his near drowning Jason suffered severe brain damage and is quadriplegic.
Gary Farris and Jason, through his guardian, brought this action for negligence.
The landlord moved for summary judgment, arguing that a landowner's duty to maintain the premises in a reasonably safe condition does not require affirmative acts to protect tenants from the inherent dangers of natural bodies of water.
The trial court agreed and granted the landlord's motion for summary judgment of dismissal. Jason and his father appealed directly to this court and we retained jurisdiction.

ISSUE
Is a landowner excused from the duty to exercise reasonable care to protect invitees from potentially dangerous conditions on the land solely because the danger is, in part, due to risks which are inherent in a natural body of water?

DISCUSSION
In reviewing a grant of summary judgment, an appellate court engages in the same inquiry as the trial court. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982); Jarr v. Seeco Constr. Co., 35 Wash.App. 324, 328, 666 P.2d 392 (1983). A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990). The facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party. Van Dinter v. City of Kennewick, 121 Wash.2d 38, 44, 846 P.2d 522 (1993); Howard v. Horn, 61 Wash.App. 520, 522, 810 P.2d 1387, review denied, 117 Wash.2d 1011, 816 P.2d 1223 (1991).
*731 In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 127-28, 875 P.2d 621 (1994); Howard, 61 Wash.App. at 523, 810 P.2d 1387; W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 30, at 164-65 (5th ed. 1984). We are concerned here only with the first element.
The threshold determination of whether a duty exists is a question of law. Tincani, 124 Wash.2d at 128, 875 P.2d 621; Howard, 49 61 Wash.App. at 523, 810 P.2d 1387. The existence of a duty may be predicated upon statutory provisions or on common law principles. Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 932, 653 P.2d 280 (1982); Howard, 61 Wash.App. at 523, 810 P.2d 1387.
Under the common law of this state a landowner's duty of care to persons on the land is governed by the entrant's common law status as an invitee, licensee or trespasser. Tincani, 124 Wash.2d at 128, 875 P.2d 621; Ertl v. Parks & Recreation Comm'n, 76 Wash.App. 110, 113, 882 P.2d 1185 (1994), review denied, 126 Wash.2d 1009, 892 P.2d 1088 (1995). The parties involved in the present case agree, for purposes of the motion for summary judgment, that Jason was an invitee at the time he was injured. Generally, a landowner owes trespassers and licensees only the duty to refrain from willfully or wantonly injuring them, whereas to invitees the landowner owes an affirmative duty to use ordinary care to keep the premises in a reasonably safe condition. Ertl, 76 Wash.App. at 113, 882 P.2d 1185; Van Dinter v. City of Kennewick, 121 Wash.2d at 41-42, 846 P.2d 522.
In the context of landlords and tenants, this means that a landlord has an affirmative obligation to maintain the common areas of the premises in a reasonably safe condition for the tenants' use. Geise v. Lee, 84 Wash.2d 866, 529 P.2d 1054 (1975) (mobile home park owner who has actual or constructive notice of hazard has a duty to remove dangerous accumulations of ice and snow from common areas). See also RCW 59.20.130(4) (landlord of a mobile home park is required to keep the common areas of the mobile home park free from potentially injurious conditions).
The Restatement (Second) of Torts § 343 (1965) states the rule as follows:
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
Tincani, 124 Wash.2d at 138, 875 P.2d 621; Leonard v. Pay'n Save Drug Stores, Inc., 75 Wash.App. 445, 447, 880 P.2d 61 (1994).
Where the danger to an invitee is known or obvious, the landowner's liability is limited by the Restatement (Second) of Torts § 343A(1), which provides:
A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
Tincani, 124 Wash.2d at 139, 875 P.2d 621; Seeco Constr. Co., 35 Wash.App. at 326, 666 P.2d 392.
In Tincani we recently held:
In limited circumstances, Restatement (Second) of Torts § 343A creates a duty to protect invitees even from known or obvious dangers. This occurs when a possessor "should anticipate the harm despite such knowledge or obviousness."
124 Wash.2d at 139, 875 P.2d 621 (quoting Restatement (Second) of Torts § 343A(1)).
Thus, under the Restatement and this state's common law, the landlord in this case had a duty to exercise reasonable care to protect all of the tenants of the mobile home park from unreasonable risks which were not *732 known or obvious. An additional duty would exist if the landlord should have anticipated the harm despite the tenant's knowledge of the danger or despite the obvious nature of the danger.
The question before us is not whether the landlord met or breached the duty owed to Jason, but rather whether the duty, itself, was excused because of the fact that the potentially dangerous condition included a natural body of water. The father and child claim that the potentially dangerous condition at Majestic Mobile Manor included the size and placement of the play area, the requirement that families with small children live in the area nearest the creek, the steepness of the embankment, and the fast flowing, murky water of Clark's Creek.
The landlord argues that a "natural bodies of water doctrine" exempts a landowner from the duty to exercise reasonable care to protect against the hazards of bodies of water. In the landlord's view, this doctrine provides that regardless of the status of the injured party, the landowner, in fulfilling his or her duty to exercise reasonable care, is not required to take affirmative steps to make safe, to warn of its presence or to prevent access to the natural body of water.
We have never recognized a "natural bodies of water doctrine" applicable to all premises liabilities actions. The rule advanced by the landlord as a defense in this case has been applied by this court in attractive nuisance cases; however, it does not apply where the injured party is an invitee.
The attractive nuisance doctrine was developed out of concern for the welfare and safety of children who trespass upon land to take advantage of an attractive, but dangerous, condition. Ochampaugh v. City of Seattle, 91 Wash.2d 514, 518, 588 P.2d 1351 (1979). The general rule is that a landowner owes no duty to a trespasser, except to refrain from causing willful or wanton injury to him. Ochampaugh, 91 Wash.2d at 518, 588 P.2d 1351. Under the exception known as the attractive nuisance doctrine, if all elements are met, the landowner is liable for physical injury caused by artificial conditions to trespassing children when the landowner "fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." Ochampaugh, 91 Wash.2d at 519, 588 P.2d 1351 (quoting Restatement (Second) of Torts § 339(e)).[2]
In Ochampaugh this court held that the attractive nuisance doctrine does not apply when the hazardous condition is a body of water having natural characteristics. The court looked to the Restatement (Second) of Torts § 339 (attractive nuisance doctrine) and stated:
In a caveat at page 197, and comments j and p, the Restatement declares the prevailing rule to be that a natural condition such as a body of water does not constitute the kind of hazard which this doctrine embraces, in the absence of some factor creating a special risk that the child will not realize the danger and avoid it. One reason for the rule which the Restatement gives is that the hazards of such natural phenomena may reasonably be expected to be understood and appreciated by any child of an age to be allowed at large. Another reason frequently cited, and noted in the Restatement, is that in most cases the burden of improving land in a state of *733 nature in order to make it safe for children would be disproportionately heavy.
Ochampaugh, 91 Wash.2d at 520, 588 P.2d 1351.
We decline to extend the rule applied in Ochampaugh to cases in which the landowner invites a child on the land. The reasons for exempting the landowner from liability in attractive nuisance cases do not exist where the injured party is an invitee, rather than a trespassing child. First, a child invitee is not the equivalent of the trespasser in an attractive nuisance action but is a guest, specifically invited on the property of the landowner. Second, the landowner's burden to make the property safe for children is not disproportionately heavy, as a matter of law, where the landowner is profiting from the child's presence on the land or where the child's presence has been invited and encouraged.
The landowner's responsibility to an invitee is based on the invitee's expectation that the premises have been made safe for the invitee's visit. Seeco Constr. Co., 35 Wash.App. at 326, 666 P.2d 392. An invitee
"enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation. He is entitled to expect such care not only in the original construction of the premises, and any activities of the possessor or his employees which may affect their condition, but also in inspection to discover their actual condition and any latent defects, followed by such repair, safeguards, or warning as may be reasonably necessary for his protection under the circumstances."
35 Wash.App. at 327, 666 P.2d 392 (quoting Restatement (Second) of Torts § 343 cmt. b).
With respect to child invitees who are known or are to be reasonably anticipated, the possessor must always keep in mind their age, immaturity, natural curiosity and tendency to get into mischief.
Joseph A. Page, The Law of Premises Liability § 4.13, at 94 (2d ed. 1988). See also Tincani 124 Wash.2d at 140, 875 P.2d 621 (distraction, forgetfulness or foreseeable reasonable advantages from encountering the danger are factors which trigger the landowner's responsibility to warn of, or make safe, a known or obvious danger).
The landlord and amicus curiae Washington Defense Trial Lawyers argue that public policy requires an exemption from liability for injuries resulting from dangers inherent in natural bodies of water. Without such an exemption, they argue, landowners will feel the need to fence or barricade the streams, lakes, rivers and beaches of this state. We do not foresee such a drastic effect as a result of our ruling today. Under the attractive nuisance doctrine, landowners already are protected from the risk of liability to trespassing children who are injured by natural bodies of water. Amicus further argues that the imposition of a duty in this case will result in landowners being substituted for parents in the supervision of children. Meyer v. General Elec. Co., 46 Wash.2d 251, 254, 280 P.2d 257 (1955) (court in an attractive nuisance case held "[t]he presence of danger to an unattended infant is not necessarily a test of anything but the need of parental care"). First, by this decision we do not make the landowner an insurer of the absolute safety of all invitees; nor do we determine that the parents' duty of supervising the child is shifted to the landowner. Any failure on the part of a parent to properly supervise a child may go to the issues of contributory fault or proximate cause, but not to whether a duty exists. See Lettengarver v. Port of Edmonds, 40 Wash.App. 577, 581, 699 P.2d 793 (1985).
Where the landowner invites a child on the property for business purposes, the landowner has a duty to take reasonable precautions to make the property safe. See Geise v. Lee, 84 Wash.2d 866, 871, 529 P.2d 1054 (1975).
Once the issue of legal duty is determined, it is the function of the trier of fact to decide whether the particular harm should have been anticipated and whether reasonable care was taken to protect against the harm. Tincani, 124 Wash.2d at 141, 875 *734 P.2d 621; Lettengarver, 40 Wash.App. at 581, 699 P.2d 793.
Thus, whether the landlord involved in this case should have anticipated and guarded against the harm to young Jason in light of all the circumstances is a question for the jury.
The trial court is reversed and the case is remanded for trial.
DOLLIVER, SMITH, JOHNSON, MADSEN, ALEXANDER and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.
DURHAM, Chief Justice (dissenting).
The majority opinion errs in two significant ways. First, as a matter of stare decisis, the majority misconstrues existing cases directly on point. Second, as a matter of public policy, the majority creates a universe in which our precious natural resources will be barricaded from public access. While I share the majority's concern for the tragic near drowning of Jason Farris, the suggested remedy is simply too extreme. We should maintain our existing law in this area and leave it to the appropriate government agencies to educate the public on the dangers natural bodies of water pose to children. Accordingly, I respectfully dissent.
In order to maintain an action in negligence, the aggrieved party must first establish that the defendant owed a duty of care. Estate of Kelly v. Falin, 127 Wash.2d 31, 36, 896 P.2d 1245 (1995). Certain natural hazards on one's property can give rise to a duty of care. For example, property owners owe a duty of care to prevent injuries resulting from an accumulation of snow and ice. Geise v. Lee, 84 Wash.2d 866, 529 P.2d 1054 (1975). Since natural bodies of water pose the threat of drowning and other accidents, it follows that a duty of care would arise from mere ownership of property containing lakes or streams. Nevertheless, we have long recognized that imposing this potential liability on all such property owners is contrary to public policy. See Ochampaugh v. City of Seattle, 91 Wash.2d 514, 588 P.2d 1351 (1979); Barnhart v. Chicago, Milwaukee & St. Paul Ry. Co., 89 Wash. 304, 154 P. 441 (1916).
Our decision in Ochampaugh provides controlling authority for the case presently before the court. In Ochampaugh, two young boys drowned in a nearby pond while unsupervised. Although the boys had fished with their father at the pond on previous occasions, he had prohibited them from going to the pond alone. The father brought a negligence action against the City of Seattle. He argued that the City owed his sons a duty of care under the doctrine of attractive nuisance even though they were trespassing on city property at the time of the accident. Generally, landowners owe no duty of care to trespassers beyond refraining from causing willful or wanton injury. Ochampaugh, 91 Wash.2d at 518, 588 P.2d 1351. If, however, a landowner knows that children are likely to trespass on property containing a dangerous condition, the landowner has an affirmative duty of care under the doctrine of attractive nuisance to alleviate the hazard. Ochampaugh, 91 Wash.2d at 520, 588 P.2d 1351. The attractive nuisance doctrine elevates the status of a child from trespasser to invitee, thus requiring a higher standard of care on the part of the landowner. See, e.g., Cope v. Doe, 102 Ill.2d 278, 80 Ill.Dec. 40, 464 N.E.2d 1023 (1984); Baker v. Lane County, 28 Or. App. 53, 56, 558 P.2d 1247 (1977); Martinello v. B & P USA, Inc., 566 So.2d 761, 762 (Fla.1990); 65 C.J.S. Negligence § 63(57) (1966).
Under this higher standard, the City ordinarily would have owed a duty of care to the Ochampaugh boys. Nonetheless, we recognized an exception in Ochampaugh for natural bodies of water and thus refused to find a duty on the part of the City. In doing so, we rejected a rule that would require the City to contemplate filling or fencing natural bodies of water frequented by children. We considered such a rule impractical, unnecessary, and inimical to the rights of property owners.
A body of watereither standing as in ponds and lakes, or running as in rivers and creeks, or ebbing and flowing, as on the shores of seas and baysis a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning *735 in it is an apparent open danger, the knowledge of which is common to all; and there is no just view consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall.
Ochampaugh, 91 Wash.2d at 522, 588 P.2d 1351 (quoting Barnhart, 89 Wash, at 308, 154 P. 441 (quoting Peters v. Bowman, 115 Cal. 345, 47 P. 113 (1896))). Moreover, we declared that compelling property owners to destroy or enclose natural bodies of water ran afoul of public policy.
The numerous ponds, lakes, rivers, creeks, and miles of shoreline in this state comprise one of its most cherished amenities, and to require that they be drained, filled, or surrounded by impregnable fences (which appear to be the only means of making them child proof) in order to escape liability for the occasional drowning which occurs, would not only impose an unreasonable burden on the owner but would also run counter to the public policy of this state.
Ochampaugh, 91 Wash.2d at 523, 588 P.2d 1351. This decision also noted that the destruction of natural bodies of water could result in considerable damage to the environment and wildlife. Ochampaugh, 91 Wash.2d at 523, 588 P.2d 1351.
In releasing the City from potential liability, we declined to shift parental responsibility to strangers. Ochampaugh, 91 Wash.2d at 522, 588 P.2d 1351. The facts of Ochampaugh demonstrate how shifting the burden of responsibility away from parents saddles landowners with a great expense without any commensurate benefits to children. Prior to our resolution of Ochampaugh, the City filled the pond where the boys drowned at a significant cost. Rather than easing the concerns of neighborhood parents, the City's destruction of a favored recreational spot left both parents and children upset. Even worse, the pond's demise did not create a safer environment for children since other natural bodies of water remained nearby. Ochampaugh, 91 Wash.2d at 523, 588 P.2d 1351. The majority ignores these considerations as it shifts responsibility to landowners.
Under Ochampaugh, landowners have no duty to mitigate the potential for water-related injuries. While this holding should dictate the outcome of today's decision, the majority declines to follow Ochampaugh for two reasons. First, the majority erroneously asserts that "a child invitee is not the equivalent of the trespasser in an attractive nuisance action." Majority at 733. As stated earlier, the attractive nuisance doctrine increases a landowner's duty of care by treating trespassing children as invitees. Second, the majority declares "the landowner's burden to make the property safe for children is not disproportionately heavy" where he or she profits from the presence of children. Majority at 733. This argument is flawed as well. Washington is not a landlocked state. Many businesses and dwellings are located on or near bodies of water. To expect that landowners can somehow make these waters safe for children at anything less than an extraordinary cost is to misunderstand the magnitude of the burden.
Even accepting the majority's argument that the doctrine of attractive nuisance does not elevate the status of trespassers to invitees, the majority still reaches an imprudent result. In Casper v. Charles F. Smith & Son, Inc., 316 Md. 573, 560 A.2d 1130 (1989), two girls fell through ice into freezing waters suffering permanent and severe injuries including brain damage. Their parents brought a negligence action against the City and its contractors. They claimed that the site of the accident, once merely a stream, had increased in depth after the onset of a construction project. Casper assumed for purposes of argument that the injured children enjoyed the status of business invitees since the parents could allege the site of the accident was a park. Casper, 316 Md. at 580, 560 A.2d 1130. Nonetheless, Casper found an exception for bodies of water, and held that the City owed no duty of care even to invitees.
Bodies of water like the stream involved in this case have historically and consistently been afforded distinctive treatment in the law relating to landowners' liability.

*736 The necessity, or at least the desirability, of maintaining such bodies of water, coupled with known inherent dangers and the difficulty of effectively protecting against those dangers, have led courts across the country to pronounce water an "open and obvious danger," for which no warning or special precaution is ordinarily needed. Moreover, in those states in which the doctrine of attractive nuisance may elevate the status of child trespassers to that of invitees, bodies of water are generally excluded from the operation of that doctrine.
Casper, 316 Md. at 581, 560 A.2d 1130. The majority opinion seems to assume that since young Jason was an invitee, Majestic Mobile Manor owes him a duty of care in all circumstances. What happened to Jason when he was two years and eight months old is every parents' nightmare. His father was working on the roof of their mobile home and turned his back on Jason for a moment. Jason, who was riding his older sister's bicycle, headed for Clark's Creek. He nearly drowned in the creek, and as a result of the accident, suffers from severe brain damage and is a quadriplegic. To suggest, however, that the owner of the mobile home park might have had a duty to somehow enclose Clark's Creek so that youngsters like Jason would not slip into the water places too great a burden on the property owners of this state.
This view is consistent with the holdings of other jurisdictions. In Scott v. Future Invs. of Miami, Inc., 559 So.2d 726 (Fla.Dist.Ct.App.1990), a seven-year-old boy drowned in a canal behind his apartment complex. His mother brought a wrongful death action against the owner of the apartment building arguing that the owner had a duty to erect a fence around the canal. The Florida District Court of Appeal, refusing to shift parental responsibility to landlords, affirmed summary judgment in favor of the landowner. See also Stevens v. Riley, 219 Ill.App.3d 823, 162 Ill.Dec. 534, 580 N.E.2d 160 (1991). Under the majority opinion, however, owners of housing unitsusually strangers to the children in their dwellingsmust now either barricade any water on their property or evict families with children in order to escape liability, should an accident occur.
The majority reaches this troublesome result by broadly interpreting our decision in Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 875 P.2d 621 (1994), a case having nothing to do with landowner liability for water related accidents. In Tincani, a fourteen-year-old student was injured on a field trip to Walk in the Wild Zoo. While exploring the zoo, the student lost the main trail and became separated from a small group of friends. In an attempt to rejoin his friends, he jumped from a natural rock formation and suffered serious injuries. A jury found in favor of Tincani and his parents in a personal injury action brought against the zoo. We reversed and remanded for a new trial, in part, because the jury's answers to special interrogatories were irreconcilably inconsistent. We also held that the trial court erred in its jury instructions on the zoo's duty of care to invitees. To determine the extent of the duty, Tincani adopted the Restatement (Second) of Torts § 343 (1965).
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
Tincani, 124 Wash.2d at 138, 875 P.2d 621. When dangerous conditions are apparent, the Restatement circumscribes the duty of care. As we noted in Tincani, "[i]n limited circumstances, Restatement (Second) of Torts § 343A creates a duty to protect invitees even from known or obvious dangers. This occurs when a possessor `should anticipate the harm despite such knowledge or obviousness'." Tincani, 124 Wash.2d at 139, 875 P.2d 621 (quoting Restatement (Second) of Torts § 343A) (emphasis added).
It makes sense to hold, as we did in Tincani, that a landowner may have a duty of care to protect against known or obvious dangers when asking the invitee to "take a walk in *737 the wild." Where exploration is expected or encouraged then the landowner should be on guard to take measures that will safeguard his or her guests. The majority unfortunately extends the reasoning of Tincani to natural bodies of water which have inherent dangers. Every year we hear terrible stories of children and adults injured, and sometimes killed, in water-related accidents. Landowners with property containing natural bodies of water certainly can "anticipate harm" flowing from these waters. But the solution should not be to put landowners in the position of sequestering children from water. The waters of this state are exceptional and warrant an exception from the general duty of care that landowners owe to invitees. I would hold that as a matter of public policy, property owners do not have a duty to protect invitees from the dangers inherent in natural bodies of water.
NOTES
[1] The child, who is now six years old, is represented in this proceeding by his guardian, Plaintiff James Degel.
[2] The Restatement (Second) of Torts § 339 provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."