

2018 FEB -5 AM 11: 14

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SHAWN L. AKIN, an unmarried woman and parent of LUCA CERO, a minor child,<br><br>    Appellant,<br><br>    v.<br><br>JULIE MCKELVEY and MICHAEL MCKELVEY, wife and husband and the marital community composed thereof,<br><br>    Respondents. | No. 75725-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: February 5, 2018 |

MANN, J. — Shawna Akin appeals an order granting summary judgment and dismissing her personal injury claim against Julie and Michael McKelvey based on injuries suffered after Akin fell off of a step outside of the McKelveys' home. Because Akin was a social guest or "licensee" and not a business invitee, and because Akin recognized the step was dangerous prior to her fall, she is barred from recovery against the McKelveys. We affirm.

No. 75725-3-I/2

## FACTS

On December 21, 2014, Akin went to the McKelveys' home to visit Julie[1] who had recently undergone surgery. Akin worked as an aesthetician employed at Partington Plastic Surgery. Julie had been Akin's client for seven years. After arranging her visit, but prior to visiting, Akin offered to bring Julie a jar of scar cream.

The McKelveys' house is at the end of a long driveway. At the end of the driveway there is a six foot high concrete wall enclosing the courtyard that leads to the McKelveys' front door with a solid wooden gate for ingress and egress. In front of the gate is a single step concrete landing, 43 inches by 46 inches, slightly wider than the gate. Upon arriving at the McKelveys' home, Akin walked up the driveway, stepped onto the landing, and entered through the gate. Akin testified in her deposition that she noticed the steep driveway, and had a sense that the single concrete step in front of a gate "didn't look safe" at the end of a "sharp driveway."

Akin stayed at the McKelveys' house for about 30 minutes, meeting members of the family, talking, and taking a tour of the home. During their visit, Julie paid Akin for the scar cream. As she was leaving, Akin opened the gate and stepped backwards through the gate and onto the landing. Akin then fell backwards landing on her wrist and back.

Akin filed a complaint against the McKelveys for injuries she sustained after the fall. The McKelveys' moved for summary judgment and dismissal based on insufficient evidence that Akin's injury was caused by their negligence or an unreasonably

---

[1] We use Julie's first name for clarity, intending no disrespect.

dangerous condition on their property. By cross motion, Akin asked the court to determine her common law status on the property, asserting she was a business invitee as opposed to a social guest or licensee. The McKelveys' responded by arguing Akin was a licensee.

The trial court granted the McKelveys' motion for summary judgment, holding that regardless of Akin's status, Akin failed to meet her burden to demonstrate the McKelveys' negligence. The trial court declined to rule whether Akin was an invitee or licensee. Akin appeals.

## ANALYSIS

### Standard of Review

We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Young v. Key Pharmaceuticals Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The moving party bears the initial burden of showing the absence of an issue of material fact. If the moving party meets this initial showing and is a defendant, the burden shifts to the plaintiff. Young, 112 Wn.2d at 225.

While we construe the evidence and reasonable inferences in the light most favorable to the nonmoving party, if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.

Ct. 2548, 91 L. Ed. 2d 265 (1986)). "Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003). The nonmoving party may not rely on speculation to create a material issue of fact. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "[M]ere allegations, denials, opinions, or conclusory statements" do not establish a genuine issue of material fact. Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

We may affirm summary judgment on any basis supported by the record, "whether or not the argument was made below." Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

*Premises Liability*

A plaintiff seeking damages under a negligence claim must establish (1) a legal duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. Pedroza v. Bryant, 101 Wn.2d 226, 228, 677 P.2d 166 (1984). Only the first element—whether the McKelveys owed Akin a legal duty—is implicated in this appeal. Whether and to what extent a defendant owed a duty to the plaintiff is a question of law to be determined by the court. McKown v. Simon Prop. Grp., Inc., 182 Wn.2d 752, 762, 344 P.3d 661 (2015).

"Under common law premises liability, a landowner owes differing duties to entrants onto land depending on the entrant's status as a trespasser, a licensee, or an invitee." Afoa v. Port of Seattle, 176 Wn.2d 460, 467, 296 P.3d 800 (2013). When the facts regarding entry onto the landowner's property are undisputed, legal status and the

duty owed is a question of law. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43,

48, 914 P.2d 728 (1996). But where the duty depends on proof of certain facts which

may be disputed, summary judgment is inappropriate. Sjogren v. Props. of Pac. Nw.,

LLC, 118 Wn. App. 144, 148, 75 P.3d 592 (2003).

With respect to both invitees and licensees, Washington follows the second

Restatement of Torts.[2] Kamla v. Space Needle Corp., 147 Wn.2d 114, 125, 52 P.3d

---

[2] With respect to invitees, the Restatement provides, in pertinent part:

> § 332. Invitee Defined
> (1) An invitee is either a public invitee or a business visitor.
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

> § 343. Dangerous Conditions Known to or Discoverable by Possessor
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>     (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>     (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>     (c) fails to exercise reasonable care to protect them against the danger.

> § 343A. Known Or Obvious Dangerous
> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

RESTATEMENT (SECOND) OF TORTS §§ 332, 343, 343A (AM. LAW INST. 1965).

With respect to licensees, the Second Restatement provides, in pertinent part:

> § 330. Licensee Defined
> A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.

> § 342. Dangerous Conditions Known To Possessor
> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>     (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>     (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

472 (2002) (citing Younce v. Ferguson, 106 Wn.2d 658, 662, 724 P.2d 991 (1986)). An invitee is either a public invitee or a business invitee. A business invitee "'is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" Younce, 106 Wn.2d at 667 (quoting RESTATEMENT (SECOND) OF TORTS § 332). A licensee, in contrast, is "'a person who is privileged to enter or remain on land only by virtue of the possessor's consent.'" Afoa, 176 Wn.2d at 467 (quoting Younce, 106 Wn.2d at 667). The term "licensee" includes: "(1) persons who come on the land solely for purposes of their own, (2) members of the occupier's household . . . , and (3) social guests. Thompson v. Katzer, 86 Wn. App. 280, 285, 936 P.2d 421 (1997).

Akin argues that she was a business invitee because she entered the property in her capacity as an aesthetician and provided an economic benefit to Julie by bringing the scar cream to her home, meaning Julie would not be required to go purchase it at the office. We disagree. The simple bestowing of some economic benefit on the possessor of the land does not automatically turn the entrant into a business invitee. "An entrant will not be a 'business visitor,' even when he or she confers an economic benefit, if there is no 'real or supposed mutuality of interest in the subject to which the visitor's business or purpose relates,' or if the benefit is merely incidental to an entry that is primarily familial or social." Thompson, 86 Wn. App. at 286.

---

       (c) the licensees do not know or have reason to know of the condition and the risk involved.
RESTATEMENT (SECOND) OF TORTS §§ 330, 342.

Here, there is no dispute that Julie was Akin's long term client. There is also no dispute that while she was at the McKelveys' home, Akin delivered, and Julie paid for a container of scar cream. But more importantly, there is no dispute that Akin's initial reason for visiting Julie was social. As Akin testified,

> I just went over there as a good deed. She was my customer. I do like her. She just had a severe scar and that she was concerned about the aesthetic outcome of that.
>
> And I literally did that because I woke up that morning and said why don't I do something nice for somebody today, and then I'll go shopping on California Street. [3]

As the contemporaneous text messages establish, it was only after Akin offered to visit Julie that the subject of the scar cream came up and Akin offered to bring some over:

> [Julie:] Hi Shawna, I hope your having a great day! Just curious if u were still planning on stopping by. If it doesn't' work I totally understand :)
>
> [Akin:] No absolutely!!! I was thinking 1:00ish. Will that work?
>
> [Julie:] Absolutly!! R u still at work
>
> [Akin:] Yes.
>
> [Julie:] Do u have Silicone tape- Sheila suggest I put That on my scar.
>
> [Akin:] Dr. Windle said blocorneum is better . . . . And super. He is a scar expert :)
>
> [Julie:] Ok–Thank you!
>
> [Akin:] We have it here . . . Do you want the biocorneum? It is silicone
>
> [Julie:] Please–
>
> [Akin:] Okay . . . Let me go up front . . . It $108 with tax.

---

[3] Clerk's Papers (CP) at 46. Julie similarly believed Akin was initially coming to visit. CP at 65.

[Julie:] Sounds Good—sm bottle

[Akin:] I can get it if you want to and you can pay me tomorrow or text your card.[4]

Finally, it is uncontested that once Akin arrived at the McKelvey home, she didn't simply deliver the scar cream. She entered the house, met Julie's husband and children, had tea while Julie ate, stayed about 30 minutes, and toured the home before she left.

Akin's offer to bring the scar cream over for Julie was "merely incidental" to her previously scheduled social visit. Based on the text conversation, it was not until after the visit was scheduled that Akin offered to bring Julie the scar cream. The evidence leads to only one conclusion: Akin was a licensee, not an invitee.

A possessor of land is liable to a licensee for any physical harm caused by a "condition on the land" only if,

> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
> (c) <u>the licensees do not know or have reason to know of the condition and the risk involved</u>.

RESTATEMENT (SECOND) OF TORTS § 342 (1965) (emphasis added).

There is no duty on the landowner to act as an insurer for the benefit of his licensees. Washington law does not require "that the occupier either prepare a safe

---

[4] CP at 114-16.

place, or that he affirmatively seek out and discover hidden dangers." <u>Memel v. Reimer</u>, 85 Wn.2d 685, 689, 538 P.2d 517 (1975). The McKelveys' duty to Akin as a licensee was to "exercise reasonable care where there is a known dangerous condition on the property and the occupier can reasonably anticipate that his licensee will not discover or realize the risks." <u>Memel</u>, 85 Wn.2d at 689. In this case, Akin offers no evidence that the McKelveys' knew the step was a dangerous condition, or that they should have reasonably anticipated Akin would not discover the step. More importantly, Akin concedes that if she was a licensee, under the second <u>Restatement of Torts</u> § 342(c), "Ms. Akin's testimony that she noticed that the top step was a dangerous condition prior to her fall would bar recovery."[5]

We affirm.

_Mann, J._

WE CONCUR:

_Trickey, A.C.J._          _Spearman, J._

---

[5] Br. of Appellant at 19.