IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| REMY DUPREUS, Ritchy Valmont's father, individually and as Personal Representative of the Estate of RITCHY VALMONT, and MELODIE VALMONT, Ritchy's Valmont's mother, individually<br><br>            Appellants,<br><br>      v.<br><br>LAKE FOREST ESTATES HOMEOWNERS' ASSOCIATION, a domestic corporation, and CHARLES S. SANTILLIAN,† JR., and ANGELA E. SANTILLIAN, individually and the marital community comprised thereof,<br><br>            Respondents,<br><br>      and<br><br>DOUGLASS A. MILLER and SARAH MILLER, individually and the marital community composed thereof,<br><br>            Defendants. | No. 78175-8-I<br><br>DIVISION ONE<br><br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: July 1, 2019 |

SMITH, J. — A day after his fourteenth birthday, Ritchy Valmont, who could not swim, tragically drowned in Lake Wilderness. His family's lawsuit against the Lake Forest Estates Homeowners Association (LFEHOA) and Charles and Angela Santillan was dismissed on summary judgment. Because neither the

---

† The amended complaint incorrectly spelled the respondents' last name. The correct spelling, "Santillan," will be used in this opinion.

LFEHOA nor the Santillans had a duty to warn Ritchy of the open and obvious danger the lake posed to a person who could not swim, we affirm.

FACTS

On June 23, 2015, Devon Miller invited Ritchy to attend his fourteenth birthday party at a lakefront park owned and maintained by the LFEHOA. Ritchy had turned 14 years old the day before. Devon's parents, Douglass and Sarah Miller (the Millers), were renting a home from the Santillans, members of the LFEHOA. As renters in the LFEHOA, Devon and his parents had access to the gated lakefront park, which is intended for use by members and their guests.

Devon, Ritchy, and several other boys entered the park, although the parties dispute whether they did so with a key or by jumping the fence. After entering the gate, on the way to the lake, they passed a kiosk with signs warning, "Danger[,] Do Not Swim Under Dock" and "No Lifeguard[,] Swim at Your Own Risk." Once they got to the lakefront, Devon and the other boys started to swim off of an L-shaped dock that extended 25 feet into the lake. Another sign in front of the dock warned, "No Lifeguard Swim at Your Own Risk." Ritchy did not know how to swim but removed his shirt, socks, and shoes, and joined the other boys on the dock. Although witness accounts differ as to whether Ritchy jumped, fell, or was pushed, he entered the water off of the lake side of the dock. Ritchy struggled in the water. His friends tried to help him but were unable to, and he sank. The boys called for help and an off-duty police officer who was in the park came to help. The officer dove after Ritchy and attempted to bring him to the surface but could not find him. Forty minutes later, a dive team recovered Ritchy

2

25 to 30 feet below the surface. Although he had a pulse when he was pulled from the water, Ritchy later died at the hospital.

Ritchy's parents, Remy Dupreus and Melodie Valmont, on their own behalves, and Dupreus, on behalf of Ritchy's estate (collectively Ritchy's family) sued the Millers, the Santillans, and the LFEHOA for negligence. The Millers settled with Ritchy's family, and the trial court dismissed them from the lawsuit. The LFEHOA moved for summary judgment, arguing that it owed no duty to Ritchy. Shortly thereafter, the Santillans separately moved for summary judgment, also arguing that they owed no duty to Ritchy. The trial court granted both motions. Ritchy's family appeals.

## NEGLIGENCE

Ritchy's family argues that the trial court erred in granting summary judgment to the LFEHOA and the Santillans on their negligence claims. We disagree.

We review summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)). Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and he fails to make a factual showing sufficient to establish an element essential to his case, summary judgment is warranted. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770

3

P.2d 182 (1989). Once the moving party shows there are no genuine issues of material fact, the nonmoving party must bring forth specific facts to rebut the moving party's contentions. Elcon Constr., 174 Wn.2d at 169. Summary judgment is proper "only if reasonable persons could reach only one conclusion from all of the evidence." Hansen v. Friend, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

To establish a cause of action for negligence, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) damages resulted, and (4) the defendant's breach proximately caused the damages. Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). "The threshold determination of whether the defendant owes a duty to the plaintiff is a question of law." Tincani, 124 Wn.2d at 128. "Under common law premises liability, a landowner owes differing duties to entrants onto land depending on the entrant's status as a trespasser, a licensee, or an invitee." Afoa v. Port of Seattle, 176 Wn.2d 460, 467, 296 P.3d 800 (2013). When the facts regarding entry onto the landowner's property are undisputed, legal status and the duty owed are questions of law. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996); Beebe v. Moses, 113 Wn. App. 464, 467, 54 P.3d 188 (2002).

*Liability of the Santillans*

Ritchy's family argues that the trial court erred in summarily dismissing their negligence claims against the Santillans. We disagree.

4

Both residential tenants and those tenants' guests are the landlord's invitees. Sjogren v. Props. of Pac. Nw., LLC, 118 Wn. App. 144, 148, 75 P.3d 592 (2003). "A landlord has an affirmative obligation to maintain common areas in a reasonably safe condition for a tenant or her guest." Sjogren, 118 Wn. App. at 148. Furthermore, a landlord has a duty to protect a tenant or guest from dangers that are open and obvious if the landlord "'should anticipate the harm despite such knowledge or obviousness.'" Sjogren, 118 Wn. App. at 148-49 (internal quotation marks omitted) (quoting Tincani, 124 Wn.2d at 139). But this duty only applies to the "possessor of land" and "condition[s] on the land." RESTATEMENT (SECOND) OF TORTS § 343A(1) (AM. LAW INST. 1965). "[A] property owner does not have a duty to protect visitors from dangers on adjacent lands." Smith v. Stockdale, 166 Wn. App. 557, 568, 271 P.3d 917 (2012).

Here, the Santillans were not the possessors of the park where Ritchy drowned. At oral argument, Ritchy's family argued that the Santillans cannot be differentiated from the LFEHOA because they are dues-paying members of the LFEHOA. But in their appellate briefing, Ritchy's family does not raise that argument or otherwise dispute that the Santillans did not own or control the park. Therefore, Ritchy's family has waived any argument that the Santillans were possessors of the land and we hold that the Santillans had no duty to warn invitees of dangers at the park. See Hall v. Feigenbaum, 178 Wn. App. 811, 817, 319 P.3d 61 (2014) ("We deem an issue not briefed to be waived."). Summary judgment dismissal of the Santillans was proper.

*LFEHOA's Liability If Ritchy Was a Licensee*

Ritchy's family argues that they raised a genuine issue of material fact as to whether the LFEHOA breached duties it owed to Ritchy as a licensee by failing to warn about the danger posed by the lack of visibility and depth of the lake or by failing to install safety measures on the dock. We disagree.

For purposes of summary judgment, LFEHOA conceded that Ritchy was at least a licensee. Washington follows the *Restatement (Second) of Torts*. Tincani, 124 Wn.2d at 133. The *Restatement* defines a licensee as "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." RESTATEMENT (SECOND) OF TORTS § 330 (AM. LAW INST. 1965). It also defines a landowner's responsibility to licensees for dangerous conditions on the land as follows:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>     (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>     (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>     (c) the licensees do not know or have reason to know of the condition and the risk involved.

RESTATEMENT (SECOND) OF TORTS § 342 (AM. LAW INST. 1965).

In Tincani, the Supreme Court applied this standard to a natural condition on land and explained that "[t]he duties in Restatement (Second) of Torts § 342 turn on the respective knowledge of landowner and licensee." Tincani, 124 Wn.2d at 133-34. First, the landowner must know, or have reason to know,

"about a hidden danger created by a natural condition." Tincani, 124 Wn.2d at 134. And, second, the licensee must know or have reason to know about the dangers presented by the natural condition. Tincani, 124 Wn.2d at 134. "A licensee's full understanding that a natural condition is dangerous ends any liability of the landowner for the condition." Tincani, 124 Wn.2d at 134. Therefore, "[w]hether a natural hazard is open and apparent depends on whether the licensee knew, or had reason to know, the full extent of the risk posed by the condition." Tincani, 124 Wn.2d at 135.

Here, Ritchy's family argues that the lack of visibility in the water, caused by an algae bloom, concealed the water's true depth and, therefore, Ritchy did not understand the danger the lake posed to him. But Ritchy's undisputed inability to know the depth of the water is precisely why he had reason to know of the danger presented by the lake. Specifically, where an algae bloom made it impossible for Ritchy to estimate the depth of the water, his observation of that condition should have given him reason to understand that being in close proximity to water of an unknown depth when he could not swim was dangerous. Furthermore, in his deposition, Dupreus stated that he and Ritchy discussed the risks associated with water if a person does not know how to swim and that he told Ritchy, "[I]f you don't know how to swim do not get in the water." This testimony further establishes that Ritchy had reason to know of the danger that the lake posed to him. Therefore, the trial court did not err by concluding that there was no genuine issue of material fact as to whether Ritchy knew or had reason to know about the danger presented by the lake.

No. 78175-8-I/8

Ritchy's family also suggests there is a question of fact as to whether the dock, which directed swimmers to the deepest part of the lake, was a dangerous condition that the LFEHOA had a duty to make safe by installing a railing and safety equipment. But the dock itself was not the dangerous condition. Here, the risk of harm was that a person who cannot swim, and who is in close proximity to a lake of unknown depth, may drown. That danger relates to the lake, not to the dock. Therefore, this argument is not persuasive.

Ritchy's family also argues that there is no evidence that suggests Ritchy had knowledge of the dangerous condition posed by the lake. But as described above, Dupreus testified in his deposition that he talked to Ritchy about the dangers of going into water and advised him not to go into water if he did not know how to swim. Ritchy's family cites to no evidence in the record that rebuts this evidence or otherwise shows that Ritchy was unaware of the dangers of being in close proximity to water of an unknown depth when he could not swim. Therefore, Ritchy's family has not met their burden on summary judgment to present a genuine issue of material fact. Summary judgment was proper.

*Ritchy's Status as a Business Invitee*

Ritchy's family argues that they presented evidence raising a genuine issue of material fact as to whether Ritchy was a business invitee and whether the LFEHOA breached the duty it owed Ritchy under the invitee standard. We disagree.

A landowner owes an affirmative duty to invitees to use ordinary care to keep the common areas of the premises it possesses in a reasonably safe

8

condition. Degel, 129 Wn.2d at 49. The *Restatement (Second) of Torts* § 343 (Am. Law Inst. 1965) governs the duty owed to invitees:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]
>      (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>      (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>      (c) fails to exercise reasonable care to protect them against the danger."

Degel, 129 Wn.2d at 49-50 (alteration in original) (quoting Tincani, 124 Wn.2d at 138). When the danger to an invitee is open and obvious, the *Restatement (Second) of Torts* § 343A creates a duty to protect invitees if the possessor should have anticipated the harm *despite* the invitee's knowledge of or the obvious nature of the danger. Degel, 129 Wn.2d at 50; Tincani, 124 Wn.2d at 139. This duty to invitees is more expansive than the duty landowners owe to licensees where a danger is open and obvious.

Washington recognizes two types of invitees under the *Restatement (Second) of Torts* § 332 (Am. Law Inst. 1965): public invitees and business visitors. Camicia v. Howard S. Wright Const. Co., 179 Wn.2d 684, 694, 317 P.3d 987 (2014). "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." RESTATEMENT (SECOND) OF TORTS § 332(2) (1965). Conversely, "[a] business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." RESTATEMENT (SECOND) OF TORTS § 332(3). An important

9

consideration to determine if an entrant is a business invitee is whether the entrant bestowed an economic benefit on the possessor. Thompson v. Katzer, 86 Wn. App. 280, 286, 936 P.2d 421 (1997).

Here, Ritchy's family presents two theories that they argue raise a genuine issue of material fact as to whether Ritchy was a business invitee. First, Ritchy's family argues that a homeowner's association that owns and maintains common areas for the use of its members and their guests must be held to the same invitee standard applicable to landlords. See Sjogren, 118 Wn. App. at 148 (a residential tenant and the tenant's guest are invitees of the landlord). But Ritchy's family does not cite any legal authority to support this argument. Therefore, we need not consider it. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments that are not supported by any citation to authority need not be considered) (citing RAP 10.3(a)(5); McKee v. Am. Home Prods., Corp., 113 Wn.2d 701, 705, 782 P.2d 1045 (1989)).

Second, Ritchy's family argues that Ritchy was a business invitee because he was a guest of the Santillans, who pay dues to the LFEHOA for maintenance and access to the park, resulting in an economic benefit to the LFEHOA. They claim that the rent the Millers paid to the Santillans was intended to cover access to the park, similar to the access granted to paying members at a private beach club. This argument is not persuasive. Although the Santillans paid dues and assessments to the LFEHOA, according to the Declarations of Covenants, Conditions, and Restrictions, the purpose of those dues and assessments was not to gain access to the park. Rather, it was to "promote the

10

recreation, health, safety and welfare of the residents," "for the improvements and maintenance of the Common Areas and Common Maintenance Areas," and "for maintenance, repair, professional services, contract services and other purposes permitted by this declaration." And the only benefit Ritchy's family alleges Ritchy's use of the park conferred upon the LFEHOA is the added attractiveness and increased property values inherent in having such a park available for members and guests to use. This benefit, without more, is too tenuous to be "directly or indirectly connected with business dealings" between Ritchy and the LFEHOA. RESTATEMENT (SECOND) OF TORTS § 332(3). In other words, even taking the evidence in the light most favorable to Ritchy's family, there is no evidence that the LFEHOA invited the Millers or their guest Ritchy to use the park for its economic benefit. And because there is no genuine issue of material fact as to whether Ritchy was an invitee, we need not consider whether the LFEHOA breached a duty to Ritchy under the invitee standard.

For the reasons described above, we affirm the summary judgment dismissal of Ritchy's family's claims.

Smith, J.

WE CONCUR:

Andrus, J.

Verellen, J.

11