[No. 14947-1-III.   Division Three.   March 18, 1997.]
ROBERT HANSEN, *Appellant*, v. HORN RAPIDS O.R.V. PARK OF THE CITY OF RICHLAND, ET AL., *Respondents*.

*Dan W. Kilpatric, Robert T. Czeisler,* and *Davidson, Czeisler, Kilpatric & Zeno, P.S.,* for appellant.

*John G. Schultz, George B. Fearing,* and *Leavy, Schultz, Davis & Fearing, P.S.; Harvey Faurholt* and *Horton, Wilkins, Faurholt & O'Connor;* and *Roger K. Garrison,* for respondents.

Thompson, A.C.J. — Robert Hansen appeals the summary dismissal of all remaining defendants in these consolidated claims arising from an accident during a motocross race at the City of Richland's Horn Rapids O.R.V. Park. We affirm the dismissals because we find no basis for holding the City or the race's promoter and sponsor liable for the acts of volunteer emergency medical personnel.

Mr. Hansen was injured when he lost control of his motorcycle during the Sunnyside Honda Fall Classic motocross race at Horn Rapids on November 9, 1986. Mr. Hansen was treated at the scene by volunteer emergency medical technicians, who he alleges removed his helmet improperly and exacerbated his injury. Mr. Hansen suffered a broken neck and is totally paralyzed below his waist and partially paralyzed from his shoulders to his waist.

At the time of the accident, Mr. Hansen was a 19-year-old professional motocross racer. He entered the race after receiving a flyer announcing at the top:

**SQUISHER RACING PRESENTS**
**1986 SECOND ANNUAL**

# SUNNYSIDE HONDA
# FALL CLASSIC

**MOTOCROSS AND ATV RACES**

The flyer used Sunnyside Honda's business logo and listed several other businesses that donated products. The bottom of the flyer included two telephone numbers to call for information; one was the business number for Sunnyside Honda, and the other was the home number for Pat Jaquish, a Sunnyside Honda employee who promoted the race under the name Squisher Racing. Sunnyside Honda received no money from the race, did not pay any employees to be involved in the race, and had no control over the race. Its only benefit was the advertising value of being the named sponsor of the race, which it received in return for donating a portion of the printing costs and some of the race prizes. Mr. Hansen called the Sunnyside Honda telephone number, spoke with an employee, and decided to travel to Richland for the race.

As a condition of a state grant, the City of Richland was required to maintain the Horn Rapids park in a condition "reasonably safe for public use." As part of this responsibility, the City required sponsors

> to obtain and cover the cost of providing trained first aid personnel, equipment, and an aid vehicle or station during events. The purpose of this requirement is to provide accident victims with emergency treatment until the City ambulance arrives to transport, if necessary.

Mr. Jaquish, operating as Squisher Racing, agreed to comply with the City's safety rules and arranged with Tri-City Aid Service to provide emergency first-aid services. He paid $100 to the service, which used the money to defray expenses. The operator of Tri-City Aid Service, Richard Robb, and two other emergency technicians worked as volunteers and were not paid for their work at Horn Rapids.

Mr. Hansen started two lawsuits. In the first, filed in August 1989, he sued the City (operator of Horn Rapids O.R.V. Park), J.T. McIntire & Sons Cycle, Inc. (operator of Sunnyside Honda), and Pat and Karen Jaquish (operators of Squisher Racing), claiming hazards at the racetrack caused his injuries. In the second lawsuit, Mr. Hansen

sued all of the defendants in the first suit, as well as Tri-City Aid Service and two of the emergency medical technicians who provided first aid, claiming the removal of Mr. Hansen's helmet caused the injuries.[1] The two lawsuits were consolidated.

The claims in Mr. Hansen's first lawsuit, relating to alleged hazards at the racetrack, were disposed of by orders of partial summary judgment in which the superior court concluded a release shielded the defendants from liability for all conduct except gross negligence. Mr. Hansen later stipulated that he could not prove gross negligence and has voluntarily dismissed that portion of his claim. All of the issues Mr. Hansen raises in this appeal relate to the emergency medical treatment, not to the conditions of the racetrack; he thus does not contest those portions of the superior court's orders relating to claims in his first lawsuit.

The superior court also disposed of the second lawsuit's claims against the City, Sunnyside Honda, and Squisher Racing, in part because of a release Mr. Hansen signed, and in part because the court concluded Tri-City Aid Service and the emergency medical technicians were independent contractors. The court also concluded Tri-City Aid Service and the emergency medical technicians were volunteers under RCW 4.24.300, and thus were immune from liability for all conduct except gross negligence. Mr. Hansen later voluntarily dismissed with prejudice his claims against Tri-City Aid Service and the emergency medical technicians.

Mr. Hansen now appeals the superior court's orders dismissing his claims; he alleges the City, Sunnyside Honda, and Squisher Racing are vicariously liable for the allegedly negligent care Tri-City Aid Service and the emer-

---

[1]Mr. Hansen stated he felt an intense pain when the technicians removed his helmet and could not move afterwards. Tryg J. Fortun, a certified emergency medical technician, stated the improper removal of the helmet "enhanced" Mr. Hansen's injuries. The emergency medical technicians who arrived first at the scene do not recall removing the helmet, but they do not deny doing so.

gency medical technicians rendered at the scene of the accident.[2]

In review of a summary judgment order, our inquiry is the same as the superior court's. *Atherton Condo. Apartment-Owners Ass'n Bd. v. Blume Dev. Co.*, 115 Wn.2d 506, 515-16, 799 P.2d 250 (1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the moving party to establish its right to judgment as a matter of law. *Higgins v. Stafford*, 123 Wn.2d 160, 169, 866 P.2d 31 (1994).

Mr. Hansen's theory of liability for the remaining claims is that each of the remaining defendants[3] is vicariously liable for the alleged negligence of Tri-City Aid Service and the emergency medical technicians. Mr. Hansen concedes Tri-City and the emergency medical technicians were independent contractors, and acknowledges the general rule that the negligence of an independent contractor is not

---

[2]The City contends Mr. Hansen's dismissal of his claims against Tri-City Aid Service also requires dismissal of his claims against the other defendants, whose liability is founded solely on a theory of vicarious liability for Tri-City's acts. However, the rule is that ordinarily a principal is derivatively responsible for an agent's acts, unless the agent's responsibility has been discharged " 'on the merits and not based on a personal defense.' " *Vern J. Oja & Assoc. v. Washington Park Towers, Inc.*, 89 Wn.2d 72, 77, 569 P.2d 1141 (1977) (quoting RESTATEMENT OF JUDGMENTS § 99 (1942)). In the case on which the City relies, claims against the agent had been dismissed on the merits. *Orwick v. Fox*, 65 Wn. App. 71, 88, 828 P.2d 12, *review denied*, 120 Wn.2d 1014 (1992). Mr. Hansen's voluntary dismissal of his gross negligence claims against Tri-City and the emergency medical technicians was not a judgment on the merits, and the rule on which the City relies does not apply. Because we conclude the other defendants are not vicariously liable for the emergency medical technicians' acts, we need not decide whether Tri-City's statutory immunity from liability for ordinary negligence extends to other defendants.

[3]Tri-City was mistakenly served with notice of this appeal, and has submitted a short brief in which it requested attorney fees. Mr. Hansen has since clarified the matter, and this court has removed Tri-City as a named party on appeal. Because the inadvertent error could have been clarified without submitting a brief, we deny Tri-City's request for attorney fees.

imputed to his employer.[4] *See* RESTATEMENT (SECOND) OF TORTS § 409 (1965); W. PAGE KEATON ET AL., PROSSER AND KEATON ON THE LAW OF TORTS § 71, at 509 (5th ed. 1984). However, Mr. Hansen contends the City and Squisher Racing are liable for the emergency medical technicians' negligence because they had a nondelegable duty to provide first aid at the racetrack. He also contends this duty extends to Sunnyside Honda, because Squisher Racing and Tri-City were acting under the apparent authority of Sunnyside Honda.

■ We first address the question of apparent authority. A person acts with apparent authority when a principal makes objective manifestations to a third party that lead the third party to believe the person is the agent of the principal. *King v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160 (1994). The manifestations must have two effects: "First, they must cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for the principal. Second, they must be such that the claimant's actual, subjective belief is objectively reasonable." *Id.*; *see Bill McCurley Chevrolet, Inc. v. Rutz*, 61 Wn. App. 53, 56-57, 808 P.2d 1167, *review denied*, 117 Wn.2d 1015 (1991); *Adamski v. Tacoma Gen. Hosp.*, 20 Wn. App. 98, 115, 579 P.2d 970 (1978). Apparent authority may be inferred only from the acts of the principal, not from the acts of the agent. *Mauch v. Kissling*, 56 Wn. App. 312, 316, 783 P.2d 601 (1989). Whether apparent authority exists is normally a question for the trier of fact. *Id.*

Arguably, Mr. Hansen subjectively believed Squisher Racing was the agent of Sunnyside Honda. Interpreting the facts in a light most helpful to Mr. Hansen, Sunnyside Honda permitted its name to be used as part of the title of the race. Sunnyside Honda's advertising logo and tele-

---

[4]This general rule is now subject to so many exceptions that "it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it." RESTATEMENT (SECOND) OF TORTS § 409 cmt. b (1965); *see Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 95, 505 P.2d 139 (1972), *review denied*, 82 Wn.2d 1001 (1973).

phone number were on the flyer announcing the race to the public, presumably with its consent, since it paid the printing costs. When Mr. Hansen called the Sunnyside Honda telephone number to ask about the race, a Sunnyside Honda employee answered the questions. There simply is no factual support for Sunnyside Honda's assertion that it "had nothing to do with these races." Br. of Resp't at 21-22. From the evidence submitted, there is at least a genuine factual question whether Mr. Hansen reasonably believed Squisher Racing was Sunnyside Honda's agent. For purposes of this summary judgment analysis, we will assume Squisher Racing was acting with the apparent authority of Sunnyside Honda, which then would be vicariously liable for Squisher Racing's conduct within that authority.

The question, then, is whether Squisher Racing (and its apparent principal, Sunnyside Honda) and the City should in turn be vicariously liable for the alleged negligence of Tri-City and the emergency medical technicians.

Mr. Hansen points out that Squisher Racing's contract with the City required it to:

> Provide no less than one (1) ambulance and have qualified first aid personnel present at the track before practice starts. A certified trauma-trained first aid person must be at the track at all times when a vehicle is on the race course. Races will not be permitted to continue if there is not at least one (1) ambulance and qualified individual (as indicated above) present. The cost of this service and track-to-hospital ambulance service is the responsibility of the sponsor.

Mr. Hansen relies on *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 582 P.2d 500 (1978), in which an employee of a subcontractor was injured on the job and sued the general contractor; the general contractor contended in defense that it had no duty to provide for the safety of its subcontractor's workers. The general contractor's agreement with the building owners required it to "assume[ ] responsibility 'for initiating, maintaining and supervising all safety precautions and programs in con-

nection with the work.' " *Id.* at 333. The Supreme Court held that "an affirmative duty assumed by contract may create a liability to persons not party to the contract, where failure to properly perform the duty results in injury to them." *Id.* at 334 (citing *Sheridan v. Aetna Cas. & Sur. Co.*, 3 Wn.2d 423, 100 P.2d 1024 (1940); *Lough v. John Davis & Co.*, 30 Wash. 204, 70 P. 491 (1902)). The Supreme Court subsequently has explained that the *Kelley* decision was "primarily based" on the fact that the general contractor retained control over the area and thus had a duty to provide for workers' safety within that area. *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 278, 635 P.2d 426 (1981).

██ ██ In this case, by contrast, Squisher Racing did not contractually agree to assume responsibility for all safety precautions at the track. In fact, Squisher Racing's only agreement was to provide for the presence of an ambulance and first-aid personnel, which it did. Squisher Racing did not retain any control over the area where the emergency medical technicians were working. The reasoning of *Kelley* does not apply. Squisher Racing and Sunnyside Honda did not owe a nondelegable duty to provide for the safety of race participants.

Mr. Hansen offers a different rationale for his contention the City had a nondelegable duty to provide first-aid services. He relies in part on *Blancher v. Bank of California*, 47 Wn.2d 1, 286 P.2d 92 (1955), in which a bank customer was injured after tripping over a ladder left on the floor by an employee of a contractor employed to remodel the bank's premises. The court concluded:

> [W]here, as here, the bank carried on its banking business during the time the cleaning and renovating of its lobby was being effected, it owed a duty to its invitees to provide and maintain a safe place for the carrying on of its business, and . . . the performance of such duty was nondelegable.

*Blancher*, 47 Wn.2d at 9. Mr. Hansen contends the City similarly owed him a nondelegable duty to maintain a safe racecourse, including the presence of competent first aid.

We reject Mr. Hansen's argument for two reasons. First, his claims here are not based on any harm resulting from conditions on the property, as were the claims in *Blancher*. If his allegations are true, Mr. Hansen's injuries were not caused by, or even exacerbated by, a condition of the property (as they were in *Blancher*), but were the result solely of another party's negligence. Second, a landowner's non-delegable duty arises from his employment of others to do work "likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken . . . ." RESTATEMENT (SECOND) OF TORTS § 416 (1965). Certainly employment of emergency medical personnel does not involve a peculiar risk of harm, but in fact is intended to *minimize* harm. *See* RESTATEMENT (SECOND) OF TORTS § 877(e) cmt. f (1979) (distinguishing between preventing harm and "compensat[ing]" for harm, whatever its cause, in which case the duty is "primarily contractual or relational").

Finally, Mr. Hansen contends the City had a nondelegable duty to provide first-aid services because of the nature of his relationship with the City. He relies primarily on *Shea v. City of Spokane*, 17 Wn. App. 236, 241-44, 562 P.2d 264 (1977), *aff'd*, 90 Wn.2d 43, 578 P.2d 42 (1978), in which the court held a city has a nondelegable duty to provide medical care for prisoners held in its jail. The *Shea* result is based on a principle articulated in RESTATEMENT (SECOND) OF TORTS § 314A (1965), which identifies various special relationships in which there are duties to aid or protect others. Subsection (4) provides that "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other."

In this case, Mr. Hansen was hardly in the custody of the City or anyone else. He was free to enter the race, or not. The reasoning of *Shea* does not apply. There is no evidence in the record that Mr. Hansen had a special relationship (or, for that matter, *any* relationship) with the

City. The City thus did not have a nondelegable duty to Mr. Hansen to provide first-aid services, and is not liable for the allegedly negligent acts of the emergency medical technicians.

Mr. Hansen has failed to establish any basis for holding the defendants were vicariously liable for the allegedly negligent acts of the emergency medical technicians. We therefore affirm the superior court's order on summary judgment.

KURTZ and BROWN, JJ., concur.

Reconsideration denied April 22, 1997.

Review denied at 133 Wn.2d 1012 (1997).