72 P.3d 230 (2003)
117 Wash.App. 451
Alma Adrienne WILLIAMSON, a single woman, Appellant,
v.
The ALLIED GROUP, INC., a Washington Corporation; Madison Bellevue U.S. Limited Partnership d/b/a Yarrowood Highlands; Madison Bellevue Apartments U.S., Inc., a Washington Corporation; Arne Construction Enterprises, Inc.; a Washington Corporation; John Does 1-10; Jane Does 1-10; Doe Corporations 1-10; and Doe Partnerships 1-10, Respondents.
No. 48457-5-1.
Court of Appeals of Washington, Division 1.
July 7, 2003.
*231 George Stafford Martin, William A. Olson, Daniel P. Mallove, Law Office of Daniel P Mallove PLLC, Seattle, WA, Respondents.
Ralph David Pittle, Attorney at Law, Bellevue, WA, for Appellant.
BECKER, C.J.
In this appeal, we review an order granting summary judgment in favor of a contractor in a slip-and-fall case. The applicable principles of premises liability impose upon the contractor the same duty as the landlord with respect to a dangerous condition created on the land by the contractor's work. We conclude that the plaintiff presented sufficient evidence to take the case to a jury.
Footbridges connected the parking lot of an apartment building to the second story units. The landlord hired a contractor, Arne's Construction, to rebuild the footbridges and to paint them with a non-stick surface. Appellant Alma Adrienne Williamson occupied one of the second-story units. The resident manager of the apartment complex notified Williamson and other tenants in advance that the footbridges would be barricaded for several days over a weekend in July to allow for the painting. For Williamson the only other access to her apartment was through an entrance on the ground floor below her apartment. To get to that entrance from her assigned parking space in front of the footbridges, Williamson had to walk down an unimproved grassy slope. The manager directed Williamson to use that alternative route while the footbridges were closed.
On the Saturday afternoon of the weekend when the footbridges were closed off, Williamson was returning from an outing with her son and granddaughter. She was following them down the grassy incline when she slipped and fell and sustained injury. Williamson testified in a deposition that the slope was steep and slippery and that there were rocks at various points on the way down. She said the ground beneath her "crumbled", and she fell on one knee with the other leg twisted behind her.
Williamson named the landlord and Arne's Construction as defendants in a suit for damages. Arne's moved for summary judgment and obtained an order of dismissal. Williamson, having settled with the landlord, asks in this appeal to have her suit against the contractor reinstated.
We review a trial court's grant of summary judgment de novo, engaging in the *232 same inquiry as the trial court and viewing the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c).
A cause of action in negligence requires that a plaintiff establish the existence of a duty owed, the breach of that duty, a resulting injury, and a proximate cause between the breach and the injury. Tincani v. Inland Empire Zoological Society, 124 Wash.2d 121, 127-28, 875 P.2d 621 (1994). "The threshold determination of whether the defendant owes a duty to the plaintiff is a question of law." Tincani, 124 Wash.2d at 128, 875 P.2d 621. The existence of a duty may be predicated upon statutory provisions or on common law principles. Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 49, 914 P.2d 728 (1996).
For purposes of summarizing the law that applies, our starting point is the law of premises liability. A landlord owes a residential tenant a duty to keep "any shared or common areas reasonably ... safe from defects increasing the hazards of fire or accident". RCW 59.18.060(3). A landlord "who leases a portion of his premises but retains control over the approaches, common passageways, stairways and other areas to be used in common by the owner and tenants, has a duty to use reasonable care to keep them in safe condition for use of the tenant in his enjoyment of the demised premises." McCutcheon v. United Homes Corp., 79 Wash.2d 443, 445, 486 P.2d 1093 (1971). See also Degel, 129 Wash.2d at 49, 914 P.2d 728. This duty includes an affirmative obligation to reasonably inspect and repair common areas, approaches and passageways:
The landlord is required to do more than passively refrain from negligent acts. He has a duty of affirmative conduct, an affirmative obligation to exercise reasonable care to inspect and repair the previously mentioned portions of the premises for protection of the lessee.
McCutcheon, 79 Wash.2d at 445, 486 P.2d 1093. See also Rossiter v. Moore, 59 Wash.2d 722, 370 P.2d 250 (1962) (landlord held liable for injuries sustained by tenant's guest when she fell from the tenant's porch that had no railing; landlord had previously removed railing to facilitate the moving-in process, and had failed to replace it). Rossiter established that the landlord's duty may exist notwithstanding the absence of any contract or covenant to repair the premises:
The person voluntarily and gratuitously making repairs upon another's premises, whether as landlord or in any other capacity, whether the premises are occupied by his tenant or by an owner, is therefore bound to take reasonable care therein, so that his act may not endanger those whom he should expect to use the premises, and if he creates a danger and that danger results in injury, he is liable therefor.
Rossiter, 59 Wash.2d at 725, 370 P.2d 250 (quoting Francis H. Bohlen, Landlord and Tenant, 35 Harvard L.Rev. 633, 651 (1922)). Here, it is undisputed that the grassy slope was a common area within the scope of the landlord's duty.
As the contractor acknowledges, the duty owed by a landlord may also be owed derivatively by a person who acts on behalf of the landlord. The general rule is set forth in Restatement (Second) of Torts § 383 (1965):
Liability of Persons Acting on Behalf of Possessor One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.
An application of § 383 is found in Jarr v. Seeco Const. Co., 35 Wash.App. 324, 666 P.2d 392 (1983). The plaintiff was injured when sheetrock fell on him while he was visiting an unfinished condominium unit during an open house. His suit against the real estate broker who brought him to the property was allowed to proceed under § 383, on a theory of premises liability. Jarr, 35 Wash.App. at 328, 666 P.2d 392.
The circumstances under which a building contractor such as Arne's can become vicariously *233 liable for the landlord's duties are circumscribed as set forth in Restatement (Second) of Torts § 384 (1965). To have the liability of the possessor of land, the contractor must create a dangerous condition on the land "while the work is in his charge":
One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.
Restatement (Second) of Torts § 384 (1965).
The phrase "while the work is in his charge" does not limit the contractor's liability spatially to the specific site under the contractor's direct physical control. Rather, it limits the contractor's liability temporally to harm occurring while the contractor is engaged in its work. See Staub v. Toy Factory, Inc., 749 A.2d 522, 534 (Pa.Super.2000) (citing Restatement (Second) of Torts § 385 (1965)).
Comment i to § 384 explains that the section "applies only to physical harm caused by some structure erected or condition created by the servant or contractor." Arne's argues that its job was limited to repair of the footbridges, and therefore Arne's cannot be viewed as having created a dangerous condition on the slope. According to Arne's, any liability arising from a slip and fall on the grassy slope belongs solely to the landlord, who had control over the slope and who directed the tenants to use it.
In support of this argument Arne's cites McMann v. Benton County, Angeles Park Communities, Ltd., 88 Wash.App. 737, 946 P.2d 1183 (1997), review denied, 135 Wash.2d 1005, 959 P.2d 125 (1998) (trailer park had no duty to protect tenant's young son from drowning in adjacent irrigation canal). McMann, however, does not involve § 384 or the derivative duty of a contractor; instead, it applies the rule that a landowner has liability for dangerous conditions on adjacent property only when correction of the unsafe condition is within the owner's control. McMann thus does not rule out a theory of liability against Arne's under § 384. The owner of Williamson's apartment complex had control of the grassy slope and Arne's was acting on behalf of the owner in blocking off the footbridge access.
Arne's also cites cases holding that a landowner's duty owed to invitees is nondelegable with respect to the areas on the property where it retains control. See, e. g., Blancher v. Bank of California, 47 Wash.2d 1, 9, 286 P.2d 92 (1955) (bank, general contractor, and scaffolding subcontractor all found liable for injury caused when customer tripped over stepladder left in the middle of the floor at lunchtime). See also Restatement (Second) of Torts § 413 (1965) (landowner who employs a contractor to do work likely to create a risk of harm to others unless special precautions are taken, will be liable for harm caused by the absence of such precautions unless landowner assures by contract or other means that precautions will be taken). But the fact that the owner's duty is nondelegable does not relieve the contractor of the duty to assure that the site is safe for invitees while the work is being performed. Indeed, Blancher stands for exactly the opposite proposition in that it holds liability was properly attributed to contractors as well as to the owner. See Blancher, 47 Wash.2d at 9, 286 P.2d 92 (bank owed nondelegable duty to invitees to provide a safe place for business; contractor, "which also assumed the performance of this duty to the bank's invitees, cannot escape liability for the same reason".). Although Washington has no cases expressly applying § 384, Blancher is consistent with the rule stated in that section, and also with the rule stated in § 413.
Arne's attempts to find support in two cases where the defendants were excused from liability in part because they had not contractually assumed a comprehensive duty for safety at the accident site. See Hansen v. Horn Rapids ORV Park, 85 Wash.App. 424, 432, 932 P.2d 724, review denied, 133 Wash.2d 1012, 946 P.2d 402 (1997) (race promoter not responsible for injuries allegedly caused to racer by volunteer emergency workers); Straw v. Esteem Construction, 45 Wash.App. 869, 874-75, 728 P.2d 1052 (1986) *234 (general contractor did not contractually assume liability for subcontractor safety and did not engage in conduct indicating that it retained control over the subcontractor's work). However, in neither of these cases did the court analyze the defendant's liability under § 384. The law of premises liability, of which § 384 is a part, was expressly found not to apply to the dispute in the Hansen case because none of the plaintiff's claims were based on any harm resulting from conditions on the property. Hansen, 85 Wash. App. at 424, 932 P.2d 724. In contrast Williamson has presented facts sufficient to warrant an application of § 384. Whether Arne's has derivative liability under § 384 does not depend upon the specific terms of Arne's contract. It depends upon whether Arne's created a dangerous condition on the land during the weekend while the work was in progress.
Could a jury find that Arne's created a dangerous condition on the land when it blocked off the footbridge access to Williamson's apartment? Arne's argues that such a finding would be untenable because the grassy slope where Williamson fell was too remote from the foot bridges where Arne's was working, and because no one told Arne's the tenants had been directed to use the grassy slope.
Arne's task was not so remote from the dangerous condition as to make imposition of liability unreasonable as a matter of law. The duty of a possessor of land (and derivatively, the duty of one acting on behalf of the possessor) is informed by the principles of due care and foreseeability:
Generally speaking, the possessor of land is liable for injuries to a business visitor caused by a condition encountered on the premises only if he (a) knows or should have known of such condition and that it involved an unreasonable risk; (b) has no reason to believe that the visitor will discover the condition or realize the risk; and (c) fails to make the condition reasonably safe or to warn the visitor so that the latter may avoid the harm.

Leek v. Tacoma Baseball Club, 38 Wash.2d 362, 365-66, 229 P.2d 329 (1951) (citing Restatement (Second) of Torts § 343 (1965)). The closing of the footbridges created the "condition" of limited access. A jury could find it was obvious that there was no other way for tenants like Williamson to go from the parking lot to the building except by descending the grassy slope. A jury thus could find that Arne's Construction, by closing off the footbridges without seeing to the provision of a safe alternate route or providing warnings, created this condition on behalf of the landlord while the work was in its charge.
A contractor's liability under § 384 is limited to harm caused by a condition created by the contractor. For this reason, liability would not extend to injuries occurring in portions of the premises that were unaffected by the contractor's work. However, § 384 states that it applies when physical harm is caused to others "upon and outside of the land" by the dangerous condition. (Emphasis added). This confirms that Arne's liability is not necessarily limited to injuries occurring within the immediate confines of the footbridges.
The final issue is whether there is sufficient evidence in the record to permit a finding that the condition created by Arne'si.e., the need to use the grassy slope as an access routewas dangerous or unsafe. Arne's points out that Williamson provided no evidence of a concealed danger, no evidence of a prior similar incident, and no evidence that Williamson herself had any difficulty with the slope on the three previous occasions during that weekend when she used it to get in and out of her apartment. Arne's thus maintains that Williamson's argument impermissibly asks the factfinder to infer a dangerous condition from the mere fact that she fell.
The record is not that thin. A jury could find, from Williamson's testimony in her deposition, that the alternative access route was steep, slippery, crumbly, and sufficiently dotted with rocks to cause anxiety and uncertainty in one descending it. There are photographs of the site in the record, but they do not add or subtract from Williamson's description. Arne's did not submit any evidence to rebut this description so as to put a *235 burden upon Williamson to come forward with more specific details or measurements.
The fact that the condition of the slope was open and obvious does not preclude liability. A landowner (or a contractor acting on behalf of the landowner) has a duty to warn of or make safe even an obvious danger if there is reason to expect that the invitee will proceed to encounter the danger because to a reasonable person in that position "the advantages of doing so would outweigh the apparent risk." Tincani v. Inland Empire Zoological Soc., 124 Wash.2d 121, 139, 875 P.2d 621 (1994) (quoting Restatement (Second) of Torts § 343A, comment f (1965)). The significant fact here was the necessity for Williamson to encounter the risk of the incline in order to get to her apartment.
Cases cited by Arne's do not compel a holding that the evidence was insufficient to show an unsafe condition. One decision found no liability on the part of a landowner for an unprotected body of water in which an uninvited child drowned. Ochampaugh v. City of Seattle, 91 Wash.2d 514, 526, 588 P.2d 1351 (1979). The present case is distinguished from Ochampaugh both by the higher duty owed to an invitee and by the fact that the slippery slope, unlike the unprotected body of water, was not easily avoidable.
In another case, the owner of a ballpark was held not liable to a visitor who was seriously injured when a high foul ball cleared a 26 foot high vertical screen in front of the plaintiff's seat before falling on his head. Leek v. Tacoma Baseball Club, 38 Wash.2d 362, 229 P.2d 329 (1951). The court commented that "there is nothing in the record, aside from this one incident, or in common experience, to indicate that foul balls of this kind cause serious injuries with sufficient frequency to be considered an unreasonable risk." Leek, 38 Wash.2d at 366, 229 P.2d 329. We do not read Leek as standing for the proposition that a dangerous situation can be proven only if there is evidence of prior mishaps. Common experience indicates that slips will occur when the only entry to a building is an unimproved grassy slope. Unlike the danger posed by high-flying foul balls, which is reduced by the visitor's ability to see the ball coming and move out of the way, a person slips and falls without any warning. And unlike the situation in the ballpark, here neither the landowner nor the contractor had taken any precautions at all against the danger of a slip-and-fall.
In summary, the contractor had the same duty to Williamson as the landlord to use due care in connection with the closing of the footbridges. A jury could conclude the closing of the footbridges forced Williamson to descend the grassy slope in order to reach her apartment; and that this was a dangerous condition within the scope of the contractor's duty.
The order of summary judgment is reversed.
KENNEDY and ELLINGTON, JJ., concur.