[No. 53537-4-I. Division One. September 16, 2005.]

D.L.S. ET AL., *Appellants*, v. DAVID MAYBIN ET AL., *Respondents*.

*Rebecca J. Roe* and *Sandra E. Widlan* (of *Schroeter Goldmark & Bender*), for appellants.

*James M. Shore* and *Molly M. Daily* (of *Stoel Rives, L.L.P.*), for respondents.

¶1 KENNEDY, J. — The assistant manager of a McDonald's franchise restaurant introduced a 15-year-old employee to

drugs and sex. Her father, Clifford Street, brought suit on behalf of himself and his daughter against the assistant manager, the franchise owner, and on a theory of vicarious liability, against McDonald's Corporation. The trial court dismissed the claims against McDonald's on grounds the company had no apparent agency relationship with the franchisee. On the record presented here, we affirm.

## FACTS

¶2 William Roberts, doing business under the name W&D Enterprises, operated a McDonald's restaurant in Newcastle under a franchise agreement with McDonald's Corporation.

¶3 In April 1999, Roberts hired 23-year-old David Maybin to work at the Newcastle McDonald's, despite Maybin's disclosure that he had "legal problems" and had committed a bank robbery. Maybin's criminal record was in fact extensive. He had held up employees at the airport shuttle where he worked on two occasions and had robbed an Albertson's grocery store. He had been convicted of three counts of robbery, possession of marijuana and drug paraphernalia, and theft.

¶4 Maybin initially worked as an hourly crew member. At some point, he served eight months in jail for the robberies. After his release, Roberts rehired him and within a month, promoted him to assistant manager. Maybin took over operations on the night shift.

¶5 At the time, there apparently existed a thriving drug scene among employees at the Newcastle McDonald's. Assistant Manager Christie Barber's husband, a former employee of the Newcastle McDonald's, allegedly supplied marijuana to the employees, many of whom (including managers) smoked pot daily at the restaurant. One manager was terminated for selling drugs out of the restaurant. Maybin was soon using drugs at work.

¶6 Into this sorry scene came D.L.S., then 15. She applied to work at the Newcastle McDonald's in about May

2000, and was hired immediately. Within weeks of starting work, she became part of the drug scene at the restaurant. By midsummer, she was involved with Maybin, who provided her with free food, alcohol, and drugs (including ecstasy), and kissed her openly in the workplace. Just before D.L.S.'s 16th birthday, Maybin took her to a motel where they spent the night and engaged in sexual intercourse.

¶7 After about four months, D.L.S. ran away from home to be with Maybin. Her parents immediately terminated her employment at the Newcastle McDonald's, and D.L.S.'s father went to the restaurant and threatened Maybin with a fire poker. (Maybin did not return to the restaurant thereafter.) D.L.S. continued to see Maybin and to use drugs with him until December 2000. Then she disappeared for six months. She was later reunited with her family.

¶8 In 2002, D.L.S. and her father sued McDonald's Corporation, franchise owner Roberts, and Maybin.[1] McDonald's moved for summary judgment on grounds it was not liable for the acts of its franchisee. The trial court granted the motion and dismissed their claims against McDonald's.

## DISCUSSION

¶9 We employ the usual standard of review on summary judgment.[2]

---

[1] The suit alleged that Maybin was liable to D.L.S. for sexual exploitation, child rape, and assault and battery; that Roberts and McDonald's Corporation were liable to D.L.S. and Mr. Street for negligent hiring, supervision, and retention of Maybin, and gender discrimination under chapter 49.60 RCW; that all defendants were liable to D.L.S. for the tort of outrage; and that all defendants were liable to both plaintiffs for negligent infliction of emotional distress. Mr. Street alleged that all defendants were further liable to him separately under RCW 4.24.010 for injury to his child and under RCW 4.24.020 for the seduction of his child.

[2] On review of summary judgment, we undertake the same inquiry as does the trial court. *Firth v. Lu*, 146 Wn.2d 608, 614, 49 P.3d 117 (2002). Summary judgment is proper only when pleadings, depositions, admissions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c).

¶10 The only question before us is whether McDonald's Corporation has liability as Roberts' principal. The parties' franchise agreement clearly provided that Roberts was not an agent of McDonald's,[3] and the evidence established no control over daily operations. Under these circumstances, McDonald's has no liability as Roberts' actual principal. *Folsom v Burger King*, 135 Wn.2d 658, 672, 958 P.2d 301 (1998) (absent power to control day-to-day operations, franchisor is not liable to employee of franchisee). The trial court so ruled, and appellants do not challenge that ruling.[4]

¶11 Rather, the issue is whether Roberts was McDonald's ostensible agent. Apparent agency occurs, and vicarious liability for the principal follows, where a principal makes objective manifestations leading a third person to believe the wrongdoer is an agent of the principal. RESTATEMENT (SECOND) OF AGENCY § 267 (1957).[5] The doctrine is intended to protect third parties who justifiably rely upon the belief that another is the agent of a principal. The doctrine has three basic requirements: the actions of the putative principal must lead a reasonable person to conclude the actors are employees or agents; the plaintiff must believe they are agents; and the plaintiff must, as a result, rely upon their care or skill, to her detriment. *See King v. Riveland*, 125 Wn.2d 500, 886 P.2d 160 (1994); *Greene v. Rothschild*, 60 Wn.2d 508, 513-14, 374 P.2d 566 (1962) (quoting RESTATEMENT, *supra*), *overruled on other grounds by Greene v. Rothschild*, 68 Wn.2d 1, 68 Wn.2d 5, 402 P.2d 356 (1965); *Hansen v. Horn Rapids O.R.V. Park*, 85 Wn. App.

---

[3] The agreement states, *"Franchisee not an Agent of McDonald's.* Franchisee shall have no authority, express or implied, to act as agent of McDonald's . . . for any purpose. Franchisee is, and shall remain, an independent contractor responsible for all obligations and liabilities . . . ." Clerk's Papers at 92, ¶ 16.

[4] Appellants note their disagreement with *Folsom*, but do not assign error to the court's ruling.

[5] "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such." RESTATEMENT (SECOND) OF AGENCY § 267 (1957).

424, 932 P.2d 724 (1997); *Adamski v. Tacoma Gen. Hosp.*, 20 Wn. App. 98, 112, 579 P.2d 970 (1978). Whether apparent authority exists is normally a question for the trier of fact. *Hansen*, 85 Wn. App. at 430. Here, analysis of this issue differs slightly with each plaintiff. We begin with D.L.S.

¶12 A person asserting apparent agency must have a subjective belief that the agent is acting for the principal. D.L.S. declares that as far as she was concerned, she worked for McDonald's Corporation. She points to the omnipresent McDonald's logo on her uniform, her paycheck, restaurant products, and other materials.

¶13 But D.L.S. testified in deposition that she knew she worked for Roberts or W&D Enterprises, not for McDonald's Corporation, and knew that Roberts was the owner of the restaurant.[6] Further, the employment application signed by D.L.S included the following:

> I certify that I have read and fully completed both sides of this application. . . . I understand that my employer is an indepen-

---

[6] D.L.S. testified as follows regarding her knowledge of who owned the Newcastle McDonald's:

Q. On the next page is your W-2 Forms. When you were paid, who did your paycheck come from?

A. They came from—like who gave them to me or just the company that I worked for?

Q. The company.

A. It was Bill Robert's company, I believe, on here.

Q. Was it WMD [sic] Enterprises or just William Roberts?

A. I don't remember exactly what it said, but it wasn't—it didn't say "McDonald's Corporation."

Q. So your W-2 wage and tax statement, what was your understanding of who this came from?

A. Just McDonald's as far as I was concerned. I didn't really think of it as any other way.

Q. On page two, doesn't it say, for Employer's Name at the top, William Charles Roberts?

A. Yeah.

Q. So you understood him to be the owner of the McDonald's in Newcastle, correct?

A. Yeah, I thought it was just McDonald's, though, because it says McDonald's right under that.

Clerk's Papers at 330.

dent Owner/Operator of a McDonald's franchise and that I am not employed by McDonald's Corporation or any of its subsidiaries. The independent Owner/Operator of this restaurant is solely responsible for all terms, condition [sic] and any other issues concerning my employment.

Clerk's Papers at 82-83.

¶14 The trial court granted summary judgment based upon D.L.S.'s actual notice that her employer was Roberts, not McDonald's.

¶15 D.L.S. contends the issue is nonetheless for the trier of fact. She argues that her age, general confusion about the identity of the employer at the Newcastle McDonald's,[7] and the presence of the McDonald's name and logo on employment documents, create a question of fact about whether she really understood that she was not employed by McDonald's.

¶16 Ordinarily, such a question would be for the jury. But here, the undisputed evidence can be interpreted only one way. D.L.S.'s youth and unfamiliarity with legal relationships cannot overcome her frank admission that she knew Roberts, not McDonald's Corporation, was her employer. Under those circumstances there can be no apparent agency.

¶17 Further, D.L.S. presents no evidence that she did anything in reliance upon a belief that she was employed by McDonald's Corporation (as opposed to Roberts or W&D Enterprises) in accepting or maintaining her employment. She testified she took the job because the restaurant was close to her house, offered flexible hours, and her friend already worked there. She continued to work knowing that her employer was Roberts, not McDonald's.

¶18 Rather, D.L.S. appears to argue that her parents' permission for her to work was given in reliance upon their

---

[7] Sherri Zobel, a 44-year-old Newcastle manager from 1995-2001, testified she thought she worked "for McDonald's," and considered herself to be a McDonald's employee as opposed to an employee of W&D Enterprises or Roberts. She testified that she told people she worked for McDonald's, that every piece of paper at work "said McDonald's on it," and that although she believed Roberts to be her superior, she thought she was employed by McDonald's. Clerk's Papers at 305.

belief that she would be working for McDonald's Corporation. We thus turn to her father's claims.

¶19 Apparent authority can be inferred only from acts of the principal, which cause the third party to " 'actually, or subjectively, believe that the agent has authority to act for the principal.' " *Hansen*, 85 Wn. App. at 430 (quoting *King*, 125 Wn.2d at 507). The belief must also be objectively reasonable in order to support justifiable reliance by the third party upon the representations made by the principal. *Id.* Mr. Street and D.L.S.'s stepmother testified that they gave permission for D.L.S. to work at the Newcastle McDonald's in the belief that "a McDonald's is a McDonald's" and would offer a safe, wholesome environment for teenage workers. They contend this belief came from McDonald's marketing and advertising.

¶20 Mr. Street described McDonald's ads portraying McDonald's as a "very positive, safe environment with young children getting 'Happy Meals' and playing in McDonald's play areas." Clerk's Papers at 305. He also points to ads emphasizing McDonald's support for the Olympics, successful young athletes, and the Ronald McDonald House. This marketing made McDonald's appear to be a highly organized, well-run corporation that values "good citizenship and youth," in "a uniform, quality, wholesome environment." *Id.* at 309. He points out that McDonald's advertising emphasizes "youth-related themes" and shows "smiling, happy, and friendly young people as their employees." *Id.* at 305. He testified that "[b]ased [on] McDonald's targeting of minors as employees, I believed that McDonald's would take at least ordinary precautions in the hiring and supervising of its employees, especially the teenagers." *Id.* at 307. He declared that McDonald's marketing of its wholesome image "deliberately misleads parents such as myself to think a McDonald's restaurant is

a good, safe working environment for our teenage children to try out their first jobs." *Id.* at 309.[8]

¶21 D.L.S.'s parents denied any knowledge that the Newcastle McDonald's was a franchise, or that most McDonald's are franchises, and alleged they allowed D.L.S. to work there believing that McDonald's "stands for a uniform, quality, wholesome environment . . . ." *Id.* at 309. Mr. Street contended that "[n]o person in their right mind would believe that McDonald's did not control what happened at the individual restaurants." *Id.* at 308. He thus contends a question of fact exists as to whether the Corporation, through its intentional creation of a wholesome image, held out its franchisees as its agents.

¶22 But as the cases make clear, more is required of the principal before its acts can create liability under the apparent authority doctrine. For example, in *Greene*, 60 Wn.2d at 514, the Yellow Cab taxi company made representations about its safety and service, and allowed its colors, markings, and name to remain on cabs sold to and used by independent owners, without notice that it no longer owned the cabs. In *Adamski*, 20 Wn. App. at 115, a patient was treated at a hospital by an independent physician; because the evidence supported inferences that the hospital held out the doctor as an employee, failed to tell the patient otherwise, and the patient relied on the care and skill of the doctor, the issue of agency was for the jury. In *Hansen v. Horn Rapids O.R.V. Park*, 85 Wn. App. 424, 429-31, 932 P.2d 724 (1997), a Honda dealer advertised a motocross race using its name, telephone number and logo, and answered calls relating to the race; the court held a question of fact existed as to whether the race promoter was its apparent agent (but held no duty arose in any event). In *Miller v. D.F. Zee's, Inc.*, 31 F. Supp. 2d 792, 797 (D. Or. 1998), employees of a Denny's franchise sued Denny's, Inc., for sexual harass-

---

[8] Mr. Street said that after D.L.S. left employment with the Newcastle McDonald's, he checked McDonald's website and found that it stated it provided "students with a clean, safe work environment." Clerk's Papers at 305. But because this knowledge was acquired later, it cannot form the basis for his consent.

ment and employment discrimination suffered at the franchise. The court held the evidence created a triable issue of fact on the issue of apparent agency where franchise employees believed they were employees of Denny's, Inc., because they were told so, there was no notice to them that they were anything other than Denny's employees, and the franchise agreement gave the franchisor control over employment training and complaints. *Miller*, 31 F. Supp. 2d at 807-08.

¶23 Beyond the general impression created by its advertising that McDonald's restaurants offer a wholesome environment, D.L.S.'s father points to no representations or acts by McDonald's upon which he relied in believing that D.L.S. worked for the Corporation or that McDonald's would ensure a safe working environment in its franchise restaurants. Using young people in advertisements, serving Happy Meals, sponsoring the Ronald McDonald house, and supporting Olympic athletes are not enough to create an apparent employment relationship between McDonald's Corporation and its franchisees' employees.

¶24 Finally, there is no evidence of reliance. D.L.S.'s father testified in his deposition that he had "nothing" to do with D.L.S.'s application to work at the Newcastle McDonald's.

¶25 The circumstances of D.L.S.'s employment at the Newcastle McDonald's franchise are deeply regrettable. But the trial court did not err in concluding the theory of liability advanced against McDonald's is unsupported. D.L.S. and her parents must pursue their claims against the tortfeasor and the franchisee.

¶26 Affirmed.

ELLINGTON and SCHINDLER, JJ., concur.