236 P.3d 214 (2010)
In re the DEPENDENCY OF M.S. (d.o.b. 10/29/05), a Minor Child.
Carmen Sigurdson, Appellant,
v.
State of Washington, Department of Social and Health Services, Respondent.
No. 63495-0-I.
Court of Appeals of Washington, Division 1.
July 19, 2010.
*215 Jennifer D. Stutzer, Attorney at Law, Seattle, WA, for Appellant.
Melissa Lynn Nelson, Sarah Reyes, Bellingham, WA, for Respondent.
LAU, J.
¶ 1 Facing the possible involuntary termination of her parental rights through a dependency termination proceeding, Carmen Sigurdson decided to voluntarily relinquish her rights to the Department of Social and Health Services in exchange for an open adoption arrangement. After a court commissioner approved the agreement, Sigurdson changed her mind and sought to revoke her consent to the relinquishment and adoption. She argued that duress exerted by her mother justified revocation. Interpreting the duress provision under RCW 26.33.160, the commissioner denied her motion, concluding that only duress exerted by the Department could establish grounds for revocation. We affirm.

FACTS
¶ 2 Sigurdson gave birth to M.S. on October 29, 2005. Nine months later, M.S. was declared dependent under RCW 13.34.030(5) based on Sigurdson's methamphetamine addiction and parental neglect. On August 29, 2006, a court commissioner ordered services to address Sigurdson's drug addiction and correct parental deficiencies and placed M.S. in foster care with her maternal grandmother, Bari Willard.[1]
¶ 3 When Sigurdson failed to participate in court ordered services, the Department petitioned to terminate her parental rights to M.S. on September 13, 2007.[2] At a preliminary *216 termination hearing on January 29, 2008, attended by Sigurdson, her attorney, M.S.'s guardian ad litem, the Department caseworker, and the Department's attorney, the commissioner ordered a termination trial be scheduled.
¶ 4 But sometime before trial, Sigurdson agreed to relinquish her parental rights and consent to her daughter's adoption.[3] At a court hearing on February 5, 2008, she signed the "Relinquishment of Custody, Consent to Termination/Adoption & Waiver of Right to Receive Notice of Proceedings." This relinquishment document provided, in part,
3. I realize that it is not in the best interest of [M.S.] to reside with me, and I confirm that I desire to and hereby consent to relinquish custody of the child to the State of Washington, Department of Social and Health Services, and hereby authorize the Department of Social and Health Service to have custody of the child and to have the power and authority to authorize and provide all necessary care for said child which shall include but not be limited to, foster care, medical care, dental care, evaluations of the child and placement of the child with prospective adoptive parents.
4. I hereby consent to termination of my parental rights and request the court to enter an order permanently terminating all of my parental rights to the child. I further consent to the child's adoption and also authorize the Department of Social and Health Services to consent, on my behalf, to the child's adoption.
. . . .
13. The foregoing consent has been given freely, voluntarily and with full knowledge of the consequences, and the consent is not the result of fraud or duress nor am I acting under the influence of anyone.[4]
¶ 5 On the same day Sigurdson relinquished M.S. to the Department, she also signed an open adoption agreement.[5] While all parties expected Willard to adopt M.S., the agreement expressly stated that in the event of "a change in adoptive parents," the agreement would "not be binding on future adoptive parents." This agreement also provided, in part,
1.3 Right to Consult Attorney. All parties, including the prospective adoptive parents, have the right to consult with an attorney regarding the proposed terms of the agreement before they sign it, and before it is approved and signed by a judge.
. . . .
3.1 This agreement is entered into by all parties willingly, without force, duress, or coercion....
In December 2008, the Department revoked Willard's foster care license after she was convicted for unlawful issuance of a check. Soon after, an addendum to the adoptive home study recommended against Willard adopting M.S.
¶ 6 Then, on January 30, 2009, Sigurdson moved to revoke her relinquishment. At an evidentiary hearing on the motion, she claimed duress induced her to give up her parental rights and allow M.S. to be adopted. She testified that while in jail facing second degree robbery and reckless endangerment charges, she agreed to the relinquishment. The charges involved an altercation with Willard, who reported it to police. According to Sigurdson, Willard visited her in jail and *217 threatened to tell the police about additional crimes she had committed if she did not consent to the adoption.[6] Sigurdson testified,
I talked to my mother and I did not want to relinquish my rights, I wanted to raise my daughter. But at that point I was looking at several, several years in prison and did not think I would be getting into drug court. And at that point in time my mother brought up the fact that I had done a lot of criminal activities and were never turned in for them, they were against her, and that I could possibly [be] facing more time had she turned them in. And she wanted me to relinquish my rights to her so that [M.S.] would have a stable place to be, and that she wouldn't be just up in the air.
Verbatim Report of Proceedings (Apr. 8, 2009) at 11. Sigurdson acknowledged the crimes Willard threatened to reveal were well founded and could have resulted in additional convictions. She presented no evidence that the Department knew about Willard's threats or that Willard made the threats on the Department's behalf before she signed the relinquishment document.[7]
¶ 7 The commissioner denied Sigurdson's motion to revoke her relinquishment. He noted that Sigurdson's motion was timely because RCW 26.33.160(3) allows a birth mother to revoke her consent for up to one year based on duress, fraud, or mental incompetence.[8] In a letter ruling, the commissioner determined, as a matter of law, that the statute limits revocation to duress "practiced by the person, department, or agency requesting the consent." RCW 26.33.160(3). Because the Department, as the party "requesting the consent" under this statute, exerted no duress, the commissioner denied Sigurdson's motion to revoke relinquishment. Sigurdson appeals.

ANALYSIS
¶ 8 Sigurdson contends the commissioner erred by limiting RCW 26.33.160's application to duress practiced by the Department. She argues that this statute allows a parent to revoke his or her consent to an adoption whenever any person uses duress to induce the parent to consent. Statutory interpretation is a question of law, reviewed de novo. Calhoun v. State, 146 Wash.App. 877, 885, 193 P.3d 188 (2008). The court's goal in interpreting a statute is to discern and carry out the legislature's intent. Stephenson v. Pleger, 150 Wash.App. 658, 662, 208 P.3d 583 (2009). To determine legislative intent, the court looks first to the plain language of the statute. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wash.2d 489, 498, 210 P.3d 308 (2009). As part of this inquiry, the court may look to the statute's context, related provisions, and the statutory scheme as a whole. Dep't of Ecology v. Campbell & Gwinn, LLC., 146 Wash.2d 1, 11 12, 43 P.3d 4 (2002). The court also interprets the statute to give effect to all its language and avoid rendering any portion of it meaningless or superfluous. Jackson v. Fenix Underground, Inc., 142 Wash.App. 141, 145-46, 173 P.3d 977 (2007). If the statute is unambiguous, the court's inquiry is at an end. Cerrillo v. Esparza, 158 Wash.2d 194, 201, 142 P.3d 155 (2006).
¶ 9 In Washington, the adoption process is governed by statute "and the propriety of action taken must be measured against the language of the statute." In re Adoption of Jackson, 89 Wash.2d 945, 947, 578 P.2d 33 (1978). Under the statute, adoption is a two-step process in which (1) the biological parent/child relationship is first terminated and (2) a new adoptive parent/child relationship is subsequently created. RCW 26.33.130, .240. At issue here is the first steptermination.
¶ 10 The termination can be voluntary or involuntary. RCW 26.33.090, .120, .130; see also RCW 13.34.180 (involuntary termination *218 under the juvenile dependency statute). A voluntary termination begins with a petition for relinquishment, which may be filed by a parent (or alleged father), the Department, an adoption agency, or a prospective adoptive parent. RCW 26.33.080(1), (2). A "relinquishment" is defined as "the voluntary surrender of custody of a child to the department, an agency, or prospective adoptive parents." RCW 26.33.020(11). The Department, agency, or prospective adoptive parent must provide written consent to assume custody of the child. RCW 26.33.080(1), (2). Thus, the adoption statute only allows a parent to relinquish custody when the Department, adoption agency, or prospective adoptive parent "stands ready to assume the responsibilities that the relinquishing parent is abdicating...." In re Marriage of Furrow, 115 Wash.App. 661, 675, 63 P.3d 821 (2003). A petition for relinquishment of custody must also be accompanied by the parent's written consent to adoption. RCW 26.33.080(1), (2). If the court determines it is in the child's best interest, it awards custody to the Department, agency, or prospective adoptive parent, who is then appointed the child's legal guardian. RCW 26.33.090(3), (4). At the same time, the court must also enter an order of termination, which "divests the parent and the child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other" except for past-due child support. RCW 26.33.090(4), .130(2).
¶ 11 A parent may revoke his or her consent to adoption for any reason before the court approves it, which can be no sooner than 48 hours after the child is born or the consent is signed. RCW 26.33.190, .160. But after court approval, a parent's ability to revoke consent is strictly limited.
[A] consent to adoption may not be revoked after it has been approved by the court. Within one year after approval, a consent may be revoked for fraud or duress practiced by the person, department, or agency requesting the consent, or for lack of mental competency on the part of the person giving the consent at the time the consent was given. A written consent to adoption may not be revoked more than one year after it is approved by the court.
RCW 26.33.160(3) (emphasis added).[9] To revoke consent under this provision based on duress, the parent must prove the duress by clear, cogent, and convincing evidence. In re Welfare of J.N., 123 Wash.App. 564, 95 P.3d 414 (2004). "[P]roof of inexperience, indecisiveness, uncertainty, emotional stress and a failure to fully comprehend the effect of surrender" is insufficient to justify revocation. In re Adoption of Baby Girl K., 26 Wash. App. 897, 906, 615 P.2d 1310 (1980). The difficulty of setting aside a consent reflects a public policy favoring finality in relinquishment proceedings. See In the Matter of A.S., 65 Wash.App. 631, 640, 829 P.2d 791 (1992) (noting that the "relinquishment and adoption statutes are intended to protect the best interests of the child, to achieve finality in the placement of children, and protect new family relationships from disturbance by natural parents").
¶ 12 Sigurdson contends the statute's plain language allows her to revoke her consent if her mother (or any person) exerted duress over her and the commissioner erred by limiting the provision to duress exerted by the Department. She notes the statute refers to duress practiced by a "person," as well as duress practiced by the Department or an agency. From this, she argues, the statute should be interpreted to allow revocation based on duress exerted by "all persons."[10] We disagree.
*219 ¶ 13 We interpret the meaning of RCW 26.33.160 by looking to its plain language in the context of the entire statutory scheme in which it appears. Bostain v. Food Exp., Inc., 159 Wash.2d 700, 708, 153 P.3d 846 (2007). Initially, we note that the ability of a parent to revoke his or her consent is an exception to the general rule that revocation is not permitted after court approval. This exception is a narrow one, permitted only in limited circumstances (where fraud, duress, or mental incompetence is established) and for a limited time (one year). The "practiced by" language at issue here creates an additional limitation. Only when duress is "practiced by the person, department, or agency requesting the consent" can the parent revoke. By delineating three discrete categories of actors whose duress establish grounds for revocation, the legislature did not intend to allow a parent to revoke whenever "anyone" exerted duress on the parent.[11] If the legislature intended this result, it could simply have allowed revocation based on duress without specifying which parties must practice the duress. We do not find Sigurdson's interpretation persuasive because it renders the "practiced by" language superfluous.[12] And she cites no relevant controlling authority to support such an expansive reading.
¶ 14 Instead of revocation based on duress exerted by "any person," we read RCW 26.33.160 to allow revocation only when duress is exerted by either the Department, agency, or prospective adoptive parent who accepts legal custody of the child. This interpretation conforms to RCW 26.33.160's plain language and the statutory scheme for voluntary relinquishments. The statute makes no reference to duress practiced by "a" or "any" personit states duress practiced by "the person ... requesting the consent." RCW 26.33.160(3) (emphasis added). This language means that revocation must be based on duress practiced by a particular personthe one "requesting the consent."
¶ 15 And not everyone who urges a parent to pursue adoption is "requesting the consent" for revocation purposes. Under the adoption statute, relinquishment is a formal, court supervised proceeding in which the birth parent relinquishes custody to only one other party. That party may be the Department, an adoption agency, or prospective adoptive parents. In any individual case, only one of these parties may file a petition for relinquishment, accept custody, become legal guardian, and assume parental responsibilities. At the same time, the parent relinquishes custody to one of these parties and consents to adoption. RCW 26.33.080, .090. Reading these provisions together with RCW 26.33.160(3), it is the party accepting legal custody that is "requesting the consent" of the parent. And "the person" referred to in RCW 26.33.160(3) is a prospective adoptive *220 parent in a private adoption, not "any person" who urges a parent to pursue adoption. We conclude that the plain language of RCW 26.33.160, when considered in light of the entire statutory scheme, means the party accepting legal custody is the party requesting the parent's consent and only duress by that party can be grounds for revocation.[13]
¶ 16 Here, it is undisputed that Sigurdson relinquished legal custody of M.S. to the Department, not Willard. In signing the relinquishment, Sigurdson stated, "I confirm that I desire to and hereby consent to relinquish custody of the child to the State of Washington, Department of Social and Health Services...." Finding that it was in M.S.'s best interests, the commissioner approved Sigurdson's relinquishment, terminated her parental rights, and authorized the Department to act as M.S.'s legal guardian. Because it was the Department "requesting the consent," and only duress practiced by the Department or its agents could provide a basis for Sigurdson's revocation under RCW 26.33.160(3),[14] the commissioner properly denied Sigurdson's motion to revoke relinquishment. We affirm.
WE CONCUR: DWYER, C.J., and ELLINGTON, J.
NOTES
[1] As to the father, an order of dependency was entered on July 3, 2007.
[2] Court ordered services included drug and alcohol evaluation and treatment, random urinalysis testing, regular attendance at AA/NA meetings, mental health evaluation and treatment, domestic violence assessment and treatment, and parenting classes.
[3] Because Sigurdson had expressed interest in voluntary termination of her parental rights and an open adoption agreement with prospective adoptive parents, the Department's attorney e-mailed draft relinquishment and open adoption documents to Sigurdson's attorney on December 14, 2007. The e-mail also said the potential adoptive parents had approved the open adoption agreement. Finally the e-mail requested Sigurdson's attorney to review these documents with her client.
[4] Sigurdson's attorney reviewed the relinquishment form with her and witnessed her signature.
[5] Sigurdson's attorney, a Department social worker, a Department attorney, M.S.'s guardian ad litem, and Bari Willard also signed the open adoption agreement.
[6] It is undisputed that she never told her court appointed criminal defense attorney or dependency/termination attorney about Willard's alleged threats.
[7] During the hearing, Willard invoked the Fifth Amendment right against self-incrimination to avoid compelled testimony. That issue is not before us.
[8] The motion was filed six days before the one-year statutory deadline. And Sigurdson does not allege revocation based on fraud or mental incompetence.
[9] There are two additional exceptions, pertaining to notice issues and Indian children. Sigurdson does not contend these exceptions apply here.
[10] Aside from her plain language argument, Sigurdson contends that the statute should be interpreted to apply to "all persons" based on the doctrine of "constitutional doubt." This doctrine applies when one statutory interpretation raises "grave doubts" about the statute's constitutionality, which an alternative interpretation would avoid. Almendarez-Torres v. United States, 523 U.S. 224, 238, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Sigurdson argues there is a "serious likelihood" that RCW 26.33.160 would violate procedural due process if interpreted to mean that a parent cannot revoke based on duress exerted by anyone. See Appellant's Opening Br. at 17. But Sigurdson cites no authority to develop this argument and the statute has previously been upheld against a due process challenge. See In re Adoption of Crews, 60 Wash.App. 202, 216-18, 803 P.2d 24 (1991). Here, Sigurdson had counsel, a hearing, and notice that she could only revoke her consent based on duress practiced by the person, department, or agency requesting her consent. Under these circumstances, Sigurdson fails to demonstrate "grave doubts" about the constitutionality of the relinquishment procedure.
[11] At oral argument before this court, Sigurdson's attorney asserted that a parent may revoke consent based on duress exerted by "anyone who requests the parent's consent to relinquish." She explained, "I don't think the statute has a limit on it.... If a person comes up to their friend and is requesting that they relinquish their child to the State and then makes some sort of improper threat or deceptive action, then yes, I believe that their conduct would be reviewed under the statute." Oral Argument, May 24, 2010.
[12] The only case authority Sigurdson relies on to support her interpretation is J.N., in which a mother sought to revoke her relinquishment to the Department based on alleged duress exerted by the Department's social worker and her foster mother. J.N., 123 Wash.App. at 576-77, 95 P.3d 414. In rejecting her claim, the court discussed the foster mother's advice to the mother that she should relinquish based on her youth and inexperience and concluded this advice did not constitute duress. J.N., 123 Wash.App. at 577, 95 P.3d 414. Sigurdson infers from this discussion that if the foster mother had practiced duress, revocation would have been permitted even though the foster mother was not a party to the relinquishment. But this inference is not justified because no party raised the question of whether duress exerted by a third party can permit revocation. And there is no analysis of the issue in the opinion. Statements made in passing that do not relate to an issue before the court are not binding. See Ass'n of Wash. Bus. v. State of Wash., Dep't of Revenue, 155 Wash.2d 430, 442, 120 P.3d 46 (2005).
[13] This interpretation also makes practical sense based on the risk of collusion and the policy favoring finality in adoption proceedings. If duress practiced by "any person" were sufficient to justify revocation, a parent seeking to revoke consent could collude with a sympathetic relative or friend to put forward credible but false duress allegations, creating uncertainty where the legislature sought to achieve finality. By limiting duress-based revocation to situations where the duress was practiced by either the Department, adoption agency, or prospective adoptive parents in the proceeding, the risk of collusion is minimized and finality preserved.
[14] Sigurdson alternatively argues that Willard was acting as the Department's "apparent agent." But under the concept of "apparent agency" the person asserting the agency claim "must have a subjective belief that the agent is acting for the principal." D.L.S. v. Maybin, 130 Wash.App. 94, 99, 121 P.3d 1210 (2005). Here, it is undisputed that the Department had no knowledge of Willard's threats and Sigurdson presented no evidence that she believed her mother was acting for the Department at the time. Sigurdson fails to show Willard was the Department's agent.